[No. 12213. Department One. — October 11, 1889.]

OSCAR ROBINSON, ADMINISTRATOR, ETC., OF J. H. BYERS, DECEASED, RESPONDENT, *v.* NEVADA BANK OF SAN FRANCISCO, APPELLANT.

OSTENSIBLE AGENCY—FROM WHAT ACTS INFERRED. — Where a party relies upon an ostensible agency to sustain an unauthorized pledge, he must give evidence of *similar* transactions in which the acts of the alleged agent were authorized or ratified. It is not sufficient that there was authority to perform acts of a different kind.

UNAUTHORIZED PLEDGE — USE OF PROCEEDS FOR THE BENEFIT OF THE OWNER OF THE PROPERTY. — Where a party obtains money by the unauthorized pledge of another's property, it does not validate the pledge

that some of the money was used to pay a debt of the person who obtained the money to the owner of the property, the latter being ignorant of the use made of his property.

ID. — Nor does it validate the pledge that part of the money was used to pay notes of the person who obtained the money upon which the owner of the property was an accommodation indorser,—the latter being in ignorance of the transaction.

ERROR IN ADMITTING EVIDENCE — How CURED. — Error in admitting evidence without the requisite preliminary or connecting proof is cured by the subsequent admission of such proof.

ERROR IN EXCLUDING EVIDENCE — How CURED. — Error in sustaining an objection to evidence is cured by the subsequent admission of substantially the same evidence.

PAROL EVIDENCE TO CONTRADICT WRITING — UNAUTHORIZED POSTSCRIPT TO GENUINE LETTER. — A postscript to a genuine letter may be shown by parol to have been added without the knowledge or authority of the writer, where there is no circumstance of estoppel. Instance.

APPEAL from a judgment of the Superior Court of of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*T. I. Bergin,* for Appellant.

The court erred in excluding Mathews's declarations as to his authority. (*Durkee* v. *C. P. R. R. Co.,* 69 Cal. 535; 58 Am. Rep. 562; *Vicksburg & Miss. R. R.* v. *O'Brien,* 119 U. S. 105.)

*George A. Blanchard, Crittenden Thornton,* and *F. H. Merzbach,* for Respondent.

The error, if any, in excluding the evidence complained of was cured by its subsequent admission. (*Hicks* v. *Whitesides,* 23 Cal. 407; *Wing Chung* v. *Los Angeles,* 47 Cal. 535; *People* v. *Hagar,* 52 Cal. 183.) The transaction was incapable of ratification, because the act done was not done, or assumed to be done, in the name of the alleged principal. (*Bank of N. America* v. *Hooper,* 5 Gray, 567; *Pentz* v. *Stanton,* 10 Wend. 271; 25 Am. Dec. 558; *Leadbeater* v. *Farren,* 5 Maule & S. 345; *Davis* v. *Clarke,* 5 Q. B. 16; 1 Parsons on Contracts, 6th ed., 48; Story on

Agency, sec. 251 a; *Collins* v. *Swan,* 7 Robt. 613; *Saunderson* v. *Griffiths,* 5 Barn. & C. 906; *Fellows* v. *Oneida,* 33 Barb. 659; *Crowder* v. *Reed,* 80 Ind. 10; *Meiners* v. *Munson,* 53 Ind. 138.)

HAYNE, C.—This was an action for damages for the conversion of 3,748 sacks of wheat. The defense was that the wheat had been pledged to the bank by the respondent's intestate, J. H. Byers, acting through one W. A. Mathews, who is claimed to have been his agent, to secure the payment of money advanced by the bank, which money had not been repaid. The general facts are as follows: Byers was a farmer in Colusa County, who was in the habit of sending his wheat to Mathews to be warehoused. Mathews was in the habit of storing the wheat in the Mission Rock warehouse in the name of Byers; and this particular lot of wheat was so stored. In November, 1884, Mathews gave a promissory note to the bank, signed "W. A. Mathews, agent," and pledged the wheat to secure its payment. The question at the trial was, whether Mathews had authority to pledge the wheat. The trial court gave judgment for the plaintiff, and the bank appeals from the judgment and from an order denying a new trial.

1. The appellant asserts in general terms that the evidence is insufficient to support the decision. The learned counsel, however, does not point out any evidence to show that the findings are erroneous, and in view of his well-known ability and industry, we consider this equivalent to an acknowledgment that the evidence is at least conflicting. But as the case is a hard one for the bank, which undoubtedly parted with its money in good faith to a person who, in some respects, at least, was agent for the owner of the wheat, we have examined the evidence to see whether it justified the findings. In the first place, it is to be observed that the bank cannot claim that it did not know that Byers was the owner of the wheat. The original warehouse receipt showed that he was.

The receipt taken in the name of the bank in place of the original receipt showed the same thing, and the note itself showed it, and the bank makes no such claim; for the answer avers that the money was advanced to Byers, and that the wheat pledged was his wheat.

In the next place, it is clear that this use of the wheat was without the knowledge or consent of Byers. He knew nothing of what had been done until an account was presented to him by Mathews, in March, 1885. Mathews, therefore, had no actual authority to pledge the wheat. The only possible question is, whether he had ostensible authority. Upon this question it is to be observed that the note did not purport to be in the name of Byers. It was signed, "W. A. Mathews, agent." The officers of the bank seem to have accepted the statement of Mathews, and to have concluded that because he had been engaged in other transactions for Byers, therefore he had authority to act in this. But in what transactions? It was incumbent upon the bank to show that he had been authorized to act in similar transactions. It was incumbent upon it to show at least one specific instance in which Mathews had assumed to sign the name of Byers, or to pledge his property for obligations in Mathews's name, and in which such act had been authorized or recognized. Upon the defense made the defendant had the affirmative of the issue, and was therefore bound to produce a preponderance of evidence. And it is to be presumed that the bank kept proper records of its transactions, and could have proved such a specific instance if it had existed; but no such instance was shown. All the specific instances shown, except one, were of notes signed by Byers himself, although these were brought to the bank by Mathews. There was one note which was signed "W. A. Mathews," with the name "J. H. Byers" written across its face; but this was not written by Byers, who knew nothing about it, and he is not shown to have authorized or recognized it. It was

afterwards paid, presumably by Mathews himself. There were other notes signed by Mathews himself, and accompanied with notes signed by Byers. But we have not been able to find a single instance authorized or recognized by Byers where the latter's name was signed by Mathews to an obligation, or where his property was pledged to secure Mathews's own obligation, without a writing signed by Byers. This being the case, we cannot attach much importance to the general statements of some of the witnesses as to what was "always done." Mathews, in some parts of his testimony, seeks to convey the idea that the money went to Byers himself, and he did, undoubtedly, pay some of the money to Byers on several occasions; but he was always indebted to Byers. When he obtained the money by the pledge of this wheat he deposited it in the Grangers' Bank. At this time he was doing a large business with the Grangers' Bank, and his account was changing every day. His deposits there between September 3d and December 12th of the year in question amounted to $75,777.57, and he drew against this money for his own purposes as occasion required, he being then, according to his own account, dealing in mining stocks, and engaged in the business of buying and selling wheat, insurance business, and making loans upon real estate, all on his own account, though with other people's money. Byers did not know that the sums he received had been raised on his wheat. He probably did not concern himself much about how Mathews got hold of the money, but accepted it because the man was indebted to him. We do not think that such payment operated to validate the otherwise invalid transaction. Mathews also states that with a part of the money raised by this pledge he paid some debts of Byers. But these were really Mathews's own debts, upon which Byers was accommodation indorser. Upon the whole case, although there is some testimony in favor of the appellant's position, the most that can possibly be said

is, that it is doubtful whether the decision was right upon the evidence, and under the well-settled rule the findings cannot be disturbed.

2. An objection was sustained to the question asked the witness Mathews as to the party for whom he was acting in obtaining the loan. But the witness afterwards answered substantially the same question, and hence if there was any error in sustaining the objection, it was without prejudice.

3. The plaintiff introduced in evidence a circular from Matthews to grain producers, soliciting the consignment of wheat to him, and offering to procure the same to be stored in warehouses for the owners, and setting forth the desirability on various grounds of such a proceeding. The objection made to this was that there was no proof that the circular had been brought to the notice of the defendant. But if the plaintiff received and acted upon this circular, we think that it was admissible upon the question as to the relations in fact existing between plaintiff and Mathews, and while, when the evidence was introduced, it had not been shown that the plaintiff had received and acted upon the circular, yet this was subsequently testified to. The error of receiving it without such testimony was therefore cured.

4. During the testimony of the witness Brander he stated that when Mathews came to the bank to get money he would "explain that Mr. Byers was interested with him in the matter." This was stricken out on motion of the plaintiff. The witness, however, almost immediately afterwards gave substantially the same testimony. He proceeded to say: " Mathews represented that he was a partner of J. H. Byers & Co., and he represented that he attended to the individual business of Byers that was not business of the firm." The question as to the representations of Mathews was afterwards directly put, and the court said: "I understand it has

been answered that Mr. Mathews did make representations concerning his authorities. I will not allow that question, because the question has been asked and answered, and if there is anything to which it is preliminary, that thing may follow without asking the question again." Under these circumstances, if there was any error, it was cured.

5. Some time after the loan was made, Byers, when he found out what had been done, wrote a letter to the bank, in which he stated that "any future negotiations on the part of Mr. Mathews as affecting above lot of wheat will not be valid." This letter was in the handwriting of one Mogk, who was the partner of Byers, but was signed by the latter in his individual name. After signing it he left it with Mogk to be mailed; and the latter wrote upon the margin of the paper the following: " Mr. Mogk, of J. H. Byers & Co., will be down to see you about Friday, May 1st, and give you full particulars in regard to the original loan of four thousand nine hundred dollars on above lot of wheat; also for the purpose of substituting my own note, to effect a complete transfer. Please acknowledge receipt of this and contents inclosed." The plaintiff was allowed to prove that this addition was written by Mogk without plaintiff's knowledge or consent, and it is urged that this was error. If any action had been taken by the bank upon the faith of this letter, we are inclined to think that it would have constituted an estoppel; but it is not shown that any such action was taken. The contrary is to be inferred from the testimony of the witness Brander. If Byers had written it himself, or had authorized it, it might perhaps have constituted a ratification, so far as the pledge was concerned. But the evidence above referred to showed that the addition was without his consent or knowledge, and we think that it was admissible to show such want of consent or knowledge. Finally, if it had appeared that Mogk was the partner of Byers with re-

spect to the wheat in question, it might be argued that the effect was the same as if the addition had been written by Byers himself; but this does not appear. The wheat did not belong to the firm of J. H. Byers & Co. It is admitted by the pleadings to have been the property of Byers himself. Mogk may have been the partner of Byers as to other matters, but in view of the admission of the pleadings it cannot be inferred that he had any authority to do anything with respect to this wheat except to post the letter as Byers signed it. If he had any such authority it was for the defendant to show it.

We therefore advise that the judgment and order appealed from be affirmed.

GIBSON, C., and VANCLIEF, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.