[No. 13281. Department One. — May 28, 1891.]

# McCORD AND BRADFIELD FURNITURE COMPANY, Appellant, v. CHARLES WOLLPERT et al., Respondents.

Sale of Furniture — Agent of Manufacturing Firm — Limitation of Authority — Old Patterns — Non-delivery — Damages. — A letter from a manufacturing firm to a customer, to the effect that for the next year they had certain new patterns of furniture, which they would be ready to submit to the inspection of the customer at the end of the month, and that "our Mr. W. will call on you early in January, and talk to you about handling the line for next year," only authorizes the agent to sell the new patterns of furniture which were in the process of manufacture, were already manufactured, or were offered to be manufactured, and the customer cannot recover damages for the failure of the manufacturer to deliver old patterns of furniture which the latter had ceased to manufacture, and which the customer claimed to have bought through the agent.

Id. — Ostensible Authority of Agent. — The mere fact that one acts as agent of a manufacturing company in one year for the sale of goods manufactured for sale for that year does not make him an ostensible agent to sell the same goods for the next year, unless such goods are continued to be manufactured or are in stock, and the principal wishes to sell them.

Id. — Goods Out of Manufacture. — An agent authorized to sell new-pattern goods, to be manufactured, in addition to those that the principal has already manufactured or was willing to manufacture, has no authority to sell old-pattern goods, which have ceased to be manufactured, and could not be manufactured except at a loss.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The counterclaim of the defendants, referred to in the opinion, was for the sum of two thousand dollars damages for refusal of the plaintiff to deliver certain sets of chamber furniture and chiffoniers, of a specified number and price, alleged to have been sold by the plaintiff to the defendants. The numbers referred to photographs of old patterns of furniture. Further facts are stated in the opinion.

*John H. Dickinson,* for Appellant.

*Olney, Chickering & Thomas,* for Respondents.

FOOTE, C. — The plaintiff brought this action against the defendants for the recovery of $881.67, alleged to be due it for goods sold and delivered to the defendants, who set up a counterclaim to an amount greater than that sued for by the plaintiff.

The court found in favor of the plaintiff to the extent of its demand, and also for the defendants to the extent of $1,658, and rendered judgment in favor of the latter for the difference between the value of the goods sold and delivered and the amount allowed on the counterclaim.

This appeal is from that judgment, and an order denying a new trial.

The first point made by the appellant is, that the court erred in finding, upon the evidence, that the plaintiff ever agreed to sell the defendants the goods which the former failed and refused to deliver the latter. The argument in this connection being that the proof showed that the alleged sale was made by an agent of the plaintiff of goods that were to be manufactured, which agent was one selling furniture on commission, and that it was not within the scope of his authority directly or ostensibly to make such a sale binding on the plaintiff.

The evidence as to the scope of the agent's authority was to this effect: That the plaintiff, the McCord and Bradfield Furniture Company, a corporation, was doing business at Grand Rapids, Michigan; that Frank Wenderoths, its alleged agent, was a member of the firm of Wenderoth Brothers in the city of Chicago, whose business was that of merchants to sell furniture on commission; that he had for several years been coming twice a year to San Francisco, selling the goods of the plaintiff and of other manufacturers to the defendants; that through him the latter had made purchase of goods at various times from plaintiff.

This being the ordinary course of business between the parties, the defendants, on the 10th of December, 1886, received a letter from the plaintiff, to the effect that for the next year the latter had *fourteen new patterns of furniture,* which it would be ready to submit to the inspection of the former by the end of the month, concluding with this sentence: "Our Frank Wenderoth will call on you early in January, and talk to you about handling the line for next year."

After the reception of this letter by the defendants, Wenderoth called upon them, and exhibited photographs of the furniture of the new patterns referred to in that communication, and also of certain old patterns.

The defendants claim that he, Wenderoth, made a contract for the plaintiff to sell some furniture of the old patterns. Wenderoth testified that he only agreed to try to induce the plaintiff to make and furnish "the old patterns which the defendants had contracted to sell to a third party in California at a profit."

The plaintiff refused to fill the order, because it had none of the old-pattern furniture in stock, and would not manufacture it to fill the order, as it would not pay it to do so, and it had ceased to manufacture such goods.

One of the defendants testified that Wenderoth was the general agent of plaintiff authorized to make all contracts for the sale of its goods west of the Missouri River, and assigned as a reason for this knowledge, that they never knew of or heard of any one else selling its goods.

So far as the defendants' knowledge as to the scope of Wenderoth's agency was derived from the plaintiff, it was from the letter above adverted to, and a similar one written some years before this transaction, and that the bills sent for goods by the plaintiff had written on them that they were sold by Frank Wenderoth or Wenderoth Brothers.

So far as the direct authority goes which Wenderoth

had from the letter introduced in evidence, and from the one which had been previously written, it seems that his authority to sell only extended to the new patterns of furniture which were in process of manufacture, were already manufactured, or were offered to be manufactured by these letters, which were written mainly for the purpose of notifying the defendants that the agent would be on hand, as he had been in previous years, and would endeavor to sell the new styles of furniture.

Upon the matter of the ostensible agency, to be deduced from what had occurred in former years, it does *not appear* that the course of business was other than that the agent sold the goods of the manufacturing company, presumably those that it was willing to manufacture, or that it was manufacturing, or that it had on hand. There is nothing to show *positively* that it would or would not have authorized the sale of old-style goods which it had ceased to manufacture. The only instance where, according to the testimony of one of the defendants, the agent had undertaken to sell goods that were no longer manufactured, and not in stock, was the present instance.

The agent had in at least one instance before this sold goods under a letter similar to the one in evidence, that is, containing authority to sell new-pattern goods, and he had in previous years also sold whatever his principal had to sell, but it is not shown that he ever, in any of those years, undertook or did sell goods which had ceased to be manufactured by his principal.

We do not see that his ostensible authority, independent of the letters, went any further than to sell goods that his principal had on hand, or was willing to manufacture, or was manufacturing.

One who acts in one year for the sale of goods manufactured for sale for that year cannot be said from that circumstance to be the agent to sell the same goods for the next year, unless they are continued to be manufac-

tured, or are in stock, and the principal wishes to sell them.

The very sending of an agent out to sell carries with it the idea that he is expected by the principal to sell to his advantage; and this being so, it wouldseem to be going a long distance out of the way to say that because he is expressly authorized to sell *manufactured goods,* he is also authorized to sell those that have ceased to be manufactured, and could not be except at a loss.

We do not think that the evidence shows either direct or ostensible authority in the agent to sell goods that his employer had ceased to manufacture, and did not carry in stock, and could not manufacture except at a loss.

An agent authorized to sell the property of his principal when manufactured has no authority to sell before it is manufactured. (*Merriam* v. *De Turk,* 66 Cal. 549.)

By parity of reasoning, an agent who is shown to have authority to sell new-pattern goods to be manufactured (and so far as this evidence shows, the agent had no further authority than to do this, and to sell what his principal had already manufactured, or was willing to manufacture) cannot be said to have authority to sell what is not being manufactured and will not be by his principal, because to manufacture it would result in a loss, which is not the prevalent idea in any business. We do not think that, under such circumstances, a reasonable man would believe that a principal would carry out any such contract, or had apparently intended to authorize his agent to make it.

It becomes unnecessary to notice any other point made by the appellant, and we advise that the judgment and order be reversed.

BELCHER, C., and TEMPLE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed.

Hearing in Bank denied.