[L. A. No. 4884.   Department One.—September 8, 1919.]

## C. H. POST, Appellant, v. CITY AND COUNTY BANK (a Banking Corporation), et al., Respondents.

[1] AGENCY—PARTIAL PAYMENT ON NOTE—ACTUAL AUTHORITY—DISPOSITION OF COLLATERAL SECURITY UPON PAYMENT—WANT OF OSTENSIBLE AUTHORITY.—A president of a corporation who was given actual authority by a stockholder to make a partial payment on the latter's note given to a bank to secure a loan to the corporation was not the ostensible agent of the stockholder for the purpose of directing the bank upon the final payment of the note to deliver the collateral security to a person other than the maker, who had paid the balance on the note, the note providing that, on payment, the security was to be returned to the maker, and the bank, in making such unauthorized delivery, was liable for conversion.

[2] ID.—AGENCY FROM ACTS—LIMITATION TO ACTS OF LIKE NATURE.—When authority is deduced from recognition of certain acts, it must be limited to the presumption of other acts of the same general kind, and cannot be extended to acts of a wholly different nature.

[3] ID.—AGENCY TO PAY NOTE—DISPOSITION OF COLLATERAL SECURITY UNAUTHORIZED.—An agent who has authority to make a partial payment, secure extensions and make final payment of a promissory note has not the authority to direct the surrender of the collateral security upon final payment.

[4] BANKING LAW—DELIVERY OF COLLATERAL SECURITY—LACK OF ORDINARY CARE.—Where the note of a stockholder of a corporation given to a bank to secure a loan to the corporation provided that the collateral security should be returned to the stockholder on payment of the note, the bank, in delivering the collateral to a person other than the stockholder upon the direction of the president of the corporation, who had previously made a partial payment on the note, without securing a written order from the stockholder or communicating with him, failed to exercise ordinary care within the meaning of section 2334 of the Civil Code.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Stanley A. Smith, Judge Presiding.   Reversed.

The facts are stated in the opinion of the court.

C. C. Mishler and Julius V. Patrosso for Appellant.

J. Wiseman Macdonald for Respondents.

LAWLOR, J.—This is an action for damages for the conversion of two trust deed promissory notes of the United Oil Company, numbers 706 and 707, owned by the plaintiff. He recovered judgment against defendants, J. B. Hedrick and A. M. Allison, for the sum of one thousand seven hundred dollars. The defendants, City and County Bank, Bank of Italy, and Irving S. Metzler, vice-president and stockholder of the former bank, were given judgment against plaintiff for their costs. A motion for a new trial on behalf of plaintiff was interposed and denied. The appeal is from the judgment and order in favor of the defendant banks only.

Plaintiff was a stockholder in the Panama Oil Company and on March 13, 1913, while in the office of that company the president, J. B. Hedrick, asked plaintiff to lend the Panama Oil Company one thousand dollars, offering the note of the company, indorsed by himself, for the amount. Post stated that he did not have the money to lend, whereupon Hedrick informed him that if he would execute and deliver a note for one thousand dollars to the City and County Bank, and deposit as collateral for the amount the two said trust deed promissory notes of the United Oil Company, the bank would make the loan. Post finally assented to the proposition. Accordingly, on March 13, 1913, Post executed and delivered to the bank his note for one thousand dollars, due thirty days from date, and delivered the two said promissory notes to the bank as collateral security, the note containing the provision that on the payment thereof the security was to be returned to Post. The bank was instructed by Post to place the one thousand dollars to the credit of the Panama Oil Company. On the same day Post was given a note for one thousand dollars for the same period by the Panama Oil Company, indorsed by Hedrick, personally. Prior to this time, Hedrick had attempted to borrow one thousand dollars from the same bank, on behalf of the Panama Oil Company, but it had refused to lend the money without security, stating that if he could get collateral the loan would be made. The court stated in an opinion, which appears in the transcript, that Post borrowed the one thousand dollars at the instigation of Hedrick and that there had been a close business intimacy between them for a considerable period prior to March 13, 1913.

There is a conflict in the evidence as to who accompanied Post to the bank to negotiate the loan. Post, Antonia C.

Fritsch, stenographer, and C. F. Spillman, bookkeeper, of the Panama Oil Company, all testified that Spillman accompanied Post to the bank, while Hedrick and Irving S. Metzler testified that Hedrick accompanied Post. On this question of fact the court made no finding. Post, on being notified in writing by the bank when his note would fall due, went to the office of the Panama Oil Company and demanded of Hedrick payment on the note which the company had executed and delivered to him. He was informed by Hedrick that the company could not at that time pay the note, but that it would pay the accrued interest.

Some time in April, 1913, the Panama Oil Company levied an assessment on its capital stock of one and one-half cents per share. It was agreed that the assessment on Post's twenty thousand shares, amounting to three hundred dollars, should be credited on the note which he held against the company. The court found that prior to February 11, 1915, the Panama Oil Company paid Post four hundred dollars upon its promissory note to him for one thousand dollars. Post was again notified in writing by the bank on June 6, 1913, that his note must be paid. He at once made demand on Hedrick that the Panama Oil Company's note be paid. At this time it was arranged between Post and Hedrick that three hundred dollars be raised as part payment on the note so as to secure an extension thereof. The partial payment was accordingly made by Hedrick. There is a conflict in the evidence as to how Hedrick came to make the payment, Hedrick testifying that he was directed to do so by Post, and the latter's version being that "it was by Mr. Hedrick's request that caused me to allow Mr. Hedrick to take my money to the bank." The court found that Hedrick was authorized by Post to make the payment, which was made up of Post's check for $140, a check of the Panama Oil Company for one hundred dollars, and two interest coupons, amounting to $60, taken from the collateral at the bank. Hedrick returned to Post a receipt for $240, which contained the statement that the time of the note had been extended to June 20, 1913. Later, another extension was granted to Post until September 13th following. Post testified that there were six or eight extensions in all.

On September 6, 1913, before the expiration of the last extension on the note, Hedrick, accompanied by A. L. Allison,

a stockholder in the two oil companies who was known at the bank, went to the bank, and Allison, at the direction of Hedrick, paid the balance of seven hundred dollars due upon the Post note. Upon the further direction of Hedrick the bank delivered the collateral to Allison. There is a sharp conflict in the testimony of Post and Hedrick as to whether the former knew in advance that this was to be done, but the court found that the seven hundred dollars was paid and the collateral surrendered to Allison without the knowledge or consent of Post. The court found that neither Hedrick nor Allison ever had any authority from Post to make the payment or receive the security. Metzler represented the bank in this transaction. He testified that Hedrick and Allison came into the bank and Hedrick said: "Mr. Post has authorized you to deliver—Mr. Post has authorized Mr. Allison to pay his note, and you are to deliver the collateral notes to Mr. Allison. . . . Mr. Post does not want the collateral delivered to me because he has more confidence in the financial responsibility of Mr. Allison." Upon this representation being made Allison gave his check to the bank for $2,527, seven hundred dollars being for the Post note and the balance on account of other business he had with the bank. Metzler testified further that on this occasion he requested Hedrick to get an order from Post authorizing the bank to surrender the collateral; but that he was satisfied to deliver it without written authorization because Hedrick had been handling the matter for Post. According to Hedrick's testimony Post first learned of the liquidation of the note and the surrender of the security and made demand on Hedrick and Allison for them on September 9, 1913, but Post and Metzler testified and the court found that Post went to the bank on January 10, 1914, and informed Metzler that he had come to take up the note. Metzler replied that the balance on the note had been paid by a check from Allison and that the collateral had been surrendered to him at the direction of Hedrick. Post answered that he had given no authority to Hedrick or Allison to pay the note and receive the security. Metzler said that he would get in touch with Hedrick at once. Later Post made a formal tender to the bank of the balance of seven hundred dollars due on the note and demanded his collateral. On September 11, 1913, the bank was consolidated with the Bank of Italy, and upon the

refusal of the latter bank and the other defendants to return the collateral to Post they were made parties defendant to this action.

The court found that Hedrick "for and under the instructions of and as the agent and representative of plaintiff," was authorized on June 6, 1913, to pay the defendant City and County Bank, to apply on plaintiff's note, the sum of three hundred dollars; that on September 6, 1913, J. B. Hedrick and A. M. Allison went to the City and County Bank and J. B. Hedrick, acting as the ostensible agent of plaintiff, caused A. M. Allison to draw his check for the sum of seven hundred dollars and deliver it to the said bank, and directed the said bank to deliver to A. M. Allison the said trust deed promissory notes, and the said bank thereupon so delivered said notes.

Thus, according to the findings, Hedrick, in making the partial payment of three hundred dollars on the note on June 6, 1913, was the actual agent of Post, and in causing Allison to draw his check for seven hundred dollars on September 6, 1913, and in directing the bank to deliver over to Allison the collateral, he was the ostensible agent of Post. There are no findings on the evidence of extensions secured from the bank by Hedrick, the number of extensions not being definitely shown by the record, nor of the circumstances attending the negotiations for and the execution and delivery of the note by Post.

Appellant urges four grounds for a reversal of the judgment. 1. That the evidence shows that Hedrick was not the agent, actual or ostensible, of the appellant, and thus not authorized to receive appellant's collateral, and that appellant is not estopped to deny the authority of Hedrick to receive said securities from the bank. 2. That, considering Hedrick at one time possessed authority to deal with the bank in regard to the note, the bank had notice that said authority had ceased and that neither Hedrick nor Allison were authorized to receive said securities. 3. Conceding Hedrick to have been the agent of plaintiff for the purpose of obtaining and drawing the securities from the bank, Allison was not the agent for that or any other purpose, and Hedrick had no power, actual or implied, to delegate his authority to Allison or to anyone else. 4. That in view of the undisputed evidence, the defendant City and County Bank, as pledgee, did not

exercise reasonable care in delivering plaintiff's securities to Allison.

[1] We are of the opinion that Hedrick was not the ostensible agent of Post for the purpose of directing the bank to give the collateral to Allison. As we have seen, there are only two findings of fact from which such authority could have been inferred, namely, the finding that on June 6, 1913, plaintiff authorized defendant Hedrick to make the three hundred dollars part payment on the note, and the further finding that on September 6, 1913, Hedrick, "acting as the ostensible agent of plaintiff, directed the City and County Bank to deliver to said A. M. Allison the said trust deed promissory notes," and that thereupon the bank delivered to Allison the said notes. However, we will consider all of the evidence contained in the record having any tendency whatever to support the finding of ostensible agency, resolving all conflicts in the evidence in favor of the finding. It appears, then, that Hedrick accompanied Post to the bank and introduced him there at the time he secured the loan, which loan was placed to the credit of the Panama Oil Company at the direction of Post. It also appears that prior to this Hedrick had applied to the bank for a loan of one thousand dollars and had been refused because he had no collateral to offer, but was told that he could have the loan if he would furnish security. It also appears that at this time the Post securities were mentioned and that Metzler told Hedrick that if he could induce Post to sign a note and put up the two one thousand dollar notes of the United Oil Company as collateral the bank would make the loan. It also appears that the bank sent notice to Post when the note was due, and later sent other urgent notices to him to pay the note, and that in response to such notices Hedrick applied to the bank for extensions, which were granted. It also appears that Hedrick paid three hundred dollars to the bank on June 6, 1913. From the foregoing we think it must be held that at the time Post applied for the loan and directed that it be placed to the credit of the Panama Oil Company, whether Hedrick was present or not, the bank knew that Post was accommodating the company and Hedrick. Hence, when Hedrick made the partial payment and secured the extensions the bank should have reasonably assumed that he was acting in behalf of himself and the company rather than as the

representative of Post. So it seems to us that the only reasonable deduction that could have been made from these facts was that Hedrick was doing what he did, not because Post had made him his agent, but because he had induced Post to lend his credit to the company. But even if this be not a proper deduction, and the finding of the court that Hedrick was the agent of Post on June 6, 1913, is to be accepted as conclusive, yet we are convinced that the finding of ostensible agency in Hedrick to secure possession of the collateral cannot be supported upon any theory.

The Civil Code provides:

"Section 2300. An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."

"Section 2317. Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

Hedrick in directing that the bank deliver the security to Allison acted entirely outside of the scope of authority which the bank was justified in assuming that he possessed. The law on this point is stated in 2 Corpus Juris, page 464, as follows: "The person sought to be bound must, by his words or conduct, have represented that the person assuming to act for him had authority to do so. Accordingly, an estoppel does not arise from the mere fact that the agent has acted for the principal on one or more previous occasions, but not under appearance of a general authority so to act, nor does the rule in question apply to acts of the agent outside of the scope of authority which the principal has caused him to seem to possess."

The other acts of Hedrick, even if acquiesced in by Post, were not of the same general nature as gaining possession of the collateral, hence Hedrick cannot be held to be the ostensible agent of Post for that purpose. As is said in Meachem on Agency (second edition, volume 1): **[2]** "It must, moreover, be kept in mind that when authority is deduced from recognition of certain acts, it must be limited to the presumption of other acts of the same general kind, and cannot be extended to acts of a wholly different nature." It is also declared in Story on Agency (eighth edition, section 87, page 110): "If the agency arises by implication

by numerous acts done by the agent with the tacit consent or acquiescence of the principal, it is deemed to be limited to acts of the like nature.'' (See, also, *Robinson* v. *Nevada Bank,* 81 Cal. 106, [22 Pac. 478]; *Consolidated Nat. Bank* v. *Pacific Coast Steamship Co.,* 95 Cal. 1, [29 Am. St. Rep. 85, 30 Pac. 96]; *Mitrovich* v. *Fresno etc. Co.,* 123 Cal. 383, [55 Pac. 1064].)

[3] This act of Hedrick cannot be regarded as of the same general kind or nature as his other dealings with the bank in relation to the note. In other words, making a partial payment, securing extensions and even causing the final payment to be made, are very different transactions from that of directing the bank to surrender the security. Upon no conceivable hypothesis can a logical relation be established between these acts and the act of Hedrick in directing the surrender of the collateral to Allison.

It is insisted on behalf of Post that when Hedrick directed the bank to deliver the collateral to Allison because Post had more confidence in the financial responsibility of Allison than he had in that of Hedrick, any authority theretofore vested in the latter was thereby terminated. It is further contended that this constituted an attempt to delegate delegated authority. But without regard to these contentions the finding of the court that the bank was justified in giving the security to Allison cannot be upheld. Section 2334 of the Civil Code reads: ''A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof.''

[4] The good faith of the bank is not to be questioned, but there can be no escape from the conclusion that it did not exercise ordinary care in the premises. The truth is the bank was victimized by Hedrick and Allison, not because of the conduct of Post, but because of the negligence of the bank through Metzler. As already stated, the court found that what was done on September 6th was without the knowledge or consent of Post. The note contained the provision that the collateral was to be returned to him. This, in itself, it seems to us, imposed upon the bank, in the exercise of ordinary care, the duty of securing a written order from Post, or of communicating with him before delivering the security. In

addition to this, it is to be borne in mind that the bank had refused to make the loan to Hedrick. A situation was thus presented to the bank which called for prudent and well-considered action, and consequently it was a further act of negligence on the part of the bank to indorse the collateral in blank instead of to the order of Post.

But it is also urged that as Post had employed Hedrick as his agent, under the rule stated in section 3543 of the Civil Code, Post should be the sufferer. That section reads: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." It is said in Meachem on Agency (second edition, volume 1, section 749, page 531) that "he who reposed confidence in the wrongdoer must bear the loss." The bank reposed confidence in Hedrick, not, in our opinion, because of his previous dealings with the bank in relation to the note, but rather for the reason that Allison figured in the transaction. That was the genius of Hedrick's scheme. It is evident that Allison had financial responsibility, and in this connection it is to be remembered that he paid to the bank at the same time some one thousand eight hundred dollars on account of other business he had with it. We think it altogether unlikely that the bank would have trusted the security to Hedrick. If it had been willing to do so, the security would have been indorsed to Post. In other words, the bank reposed confidence in Hedrick's representations as to the collateral, principally, or entirely, because it was to be given to Allison, and, of course, Post is not to be charged with Allison's connection with the fraudulent transaction. Because Metzler failed to do any one of three things the bank was negligent in surrendering the collateral—Hedrick's representations should have been verified, or if this was not done, a written order should have been insisted upon, or if neither of these things was done, the security should have been indorsed to Post. Under no conceivable theory can it be maintained that the bank through Metzler exercised ordinary care in parting with the collateral. It is plain that when Metzler first learned that the security had been obtained through fraud he realized that the bank was at fault, for he said to Post, according to the latter's version, which is not denied by Metzler: "Well, I will get busy. . . . Mr. Post, we will get right after this and see that it is fixed up." Post

replied: "All right, Mr. Metzler, I will depend upon you to do that."

For the foregoing reasons, we think the evidence does not justify the finding of the trial court that Hedrick was the ostensible agent of plaintiff for the purpose of withdrawing the security. The judgment and order are reversed and a new trial ordered as to the defendant banks.

Olney, J., and Shaw, J., concurred.

Hearing in Bank denied.

All the Justices concurred.