[Civ. No. 11015.   First Appellate District, Division Two.—November 8, 1939.]

KERR GIFFORD & COMPANY, Appellant, v. AMERICAN DISTILLING COMPANY, Respondent.

Carl R. Schultz for Appellant.

Norman A. Eisner for Respondent.

STURTEVANT, J.—In this action the plaintiff sued to recover an alleged balance claimed to be due on the sale of a quantity of corn. The trial court made findings in favor of the defendant and from a judgment entered thereon the plaintiff has appealed.

In its complaint the plaintiff alleged: "That on or about July 14, 1937, plaintiff agreed to sell to defendant and defendant agreed to purchase from plaintiff 500 short tons of 2,000 lbs. each of Argentine corn in bulk, to be of fair aver-

age quality, 1937 crop, for a price of $2.02½ per 100 lbs, f. o. b. cars Oakland elevator, Oakland, California, shipment from elevator as instructed by buyer, 10 days free storage after arrival and 15¢ per ton per month storage to be paid to defendant on any undelivered portion thereafter." The defendant denied the foregoing allegations and pleaded affirmatively certain new matter.

The plaintiff contends that all findings predicated on the existence of any terms of sale or agreement, other than alleged in its complaint and as set forth above, are contrary to the evidence. On the trial it produced a document in words and figures as follows:

"Kerr Gifford & Co. Inc.
San Francisco, California
July 14, 1937. No. 51.

The American Distilling Company
    369 Pine Street
        San Francisco, California.

Gentlemen:

We confirm sale of the following to you:

Quantity    Five hundred (500) tons of 2000 lbs.

Commodity   Argentine corn—f. a. q. (bulk) 1937 crop.

Price       $2.02½ per cental—net cash against bills of lading and weight certificates.

Basis       f. o. b. cars Oakland Elevator, Oakland, California. (shipment from Elevator as instructed by buyer)

Shipment    S. S. 'West Cactus' or substitute—July 1937 shipment from the Argentine.

Remarks     Ten days free storage after arrival—15¢ per ton per month on undelivered portion thereafter.

(Signed)    Kerr Gifford & Co., Inc., by W. S. Bell. Accepted by S. McTigue."

As said document was not signed by it the defendant contended it was not an enforceable contract against the defendant. (Civ. Code, sec. 1624a.) However, the plaintiff introduced other evidence. It showed two sales of spot corn made by plaintiff to defendant in the preceding month. Mr. McTigue, in behalf of and with the express approval of the defendant, wrote to the plaintiff on September 14, 1937, a letter as follows:

"Gentlemen:

"Replying to your letter of September 10, 1937. I personally had a definite agreement with your agent Mr. Fred P. De Hoff, that the corn would only be taken at the market price at the date of each car delivery, and that each car would have to be approved as to quality based upon sample to be furnished to us. In other words, the purchase was to be made as we had heretofore made them from you, and quality would have to meet our requirements.

"I had never purchased and was not authorized to purchase corn futures on behalf of the American Distilling Company. I of course, do not know who made out the confirmation sale, and it was a complete oversight on my part in not observing that the guarantee against price decline and provision for quality were not properly expressed. I had entirely relied upon De Hoff.

"The American Distilling Company is willing to take this corn at the market price provided it complied in quality, within a period of 30 days. The company has already asked you to ship one car of 80,000 pounds, and is now ready to take another, subject to approval of sample.

"The price is to be the present market price of $1.92½ per cwt., f. o. b. Oakland, for the car now needed.

"The American Distilling Company is willing to carry out what I agreed to do and hereby offers to take from you 500 tons of Argentine Corn, 1937 crop, subject to approval of sample, within 30 days from this date at the prevailing market price at the time of delivery of each car as ordered. This was my agreement with Mr. De Hoff.

"If you are unwilling to furnish us with corn in accordance with the above terms we shall be obliged to buy on the market elsewhere.

"Please advise us by return mail, what you propose to do so that we may govern ourselves accordingly.

"Yours truly,

"S. McTigue."

The letter was answered on September 25, 1937, by Mr. Schulz, acting as the attorney for the plaintiff. His letter was as follows:

"Gentlemen:

"I wish to confirm conversation with Mr. McTigue today pursuant to which Kerr Gifford & Company is shipping one car of corn to Waldo, Marin County.

"This car is being shipped by Kerr Gifford pursuant to its understanding of its contract with you of July 14, 1937, their confirmation, number 51. We understand that you are instructing shipment under the terms of a different arrangement set forth in your letter of September 14, 1937.

"It is my further understanding that this car is shipped by Kerr Gifford & Company, and if accepted by you, so accepted without prejudice to the respective claims under the contract, but to minimize the loss to the parties arising out of the dispute.

"I desire that it be particularly clear that in shipping this car there is no waiver of any term of the confirmation dated July 14, 1937, Number 51, but on the other hand acknowledge that acceptance of the car does not prejudice your right to claim a different contract based on your letter of September 14, 1937.

"I am delivering a copy of this letter to you and to Kerr Gifford at this time, in order that there may be no misunderstanding prior to the movement of the car.

"Yours very truly,

"CARL R. SCHULZ.

"CC Kerr Gifford & Company Merchants Exchange Building."

After those letters were written the plaintiff caused to be delivered and the defendant received 500 tons of corn and paid the market price therefor. In this action the plaintiff seeks to recover judgment against the defendant for the difference between the purchase price, as set forth in the confirmation dated July 14, 1937, and the amount paid by the defendant.

The plaintiff claims that McTigue had ostensible authority and it calls attention to the two sales of spot corn. The defendant calls attention to the fact that both of the sales were of spot corn and that neither involved the purchase of futures; that both purchases were made by defendant's president personally and that McTigue was merely authorized to carry out the contracts made by said president, and that there was sworn testimony that McTigue had no authority to sign the confirmation dated July 14, 1937. It further relies on the proposition that, although both parties maintain offices in San Francisco, the plaintiff made no inquiry to ascertain the powers of McTigue. Both distinctions are well founded.

In *Davis* v. *Trachsler,* 3 Cal. App. 554, at page 559 [86 Pac. 610], the court said: "The appellant having actual notice of the agency, it was incumbent on him to ascertain the scope of the authority possessed by Hopkins (*Solari* v. *Snow,* 101 Cal. 387 [35 Pac. 1004]), and whether he had any right to make contracts of sale and especially the kind he made with appellant. (Citing authorities.)" (See, also, *Ernst* v. *Searle,* 218 Cal. 233, 239, 240 [22 Pac. (2d) 715].) In all that McTigue did regarding the two purchases of spot corn he acted as a special agent. (Civ. Code, sec. 2297.) The plaintiff was not entitled to claim that such facts conferred on him apparent authority to deal in futures. (*Davis* v. *Trachsler, supra; McCord etc. F. Co.* v. *Wollpert,* 89 Cal. 271, 274 [26 Pac. 969]; *Merriam* v. *De Turk,* 66 Cal. 549 [6 Pac. 424]; *Tomasini* v. *Smith,* 26 Cal. App. 227 [146 Pac. 691]; *Hibernia Sav. etc. Soc.* v. *Dickinson,* 167 Cal. 616, 624, 625 [140 Pac. 265]; *Post* v. *City and County Bank,* 181 Cal. 238, 244 [183 Pac. 802].)

Conceding solely for the purposes of this decision that evidence of the two purchases by the defendant of spot corn was properly admitted for the purpose of proving that McTigue had ostensible authority to purchase futures, such evidence was insufficient to justify this court in disturbing the finding of the trial court on the issue of ostensible authority. Section 2334 of the Civil Code provides: "For acts done under a merely ostensible authority. A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof." Although the plaintiff and the defendant had their offices within a few blocks of each other, although McTigue signed his own name, and although, in doing so, he did not even purport to sign as "agent", the plaintiff retained the confirmation dated July 14, 1937, and made no inquiry as to the authority of McTigue. Its failure to make such inquiry, under the facts, precluded it from claiming that McTigue was exercising ostensible authority. (*Post* v. *City and County Bank, supra,* 246.) Moreover, as early as September 14, 1937, the plaintiff was definitely advised that McTigue had no authority " . . . to purchase corn futures . . . " Furthermore, at that time the plaintiff had not " . . . incurred a liability or parted with value

. . . " upon the faith of McTigue's acts or at all. But being so advised its attorney wrote the letter dated September 25, 1937.

The plaintiff claims the defendant ratified the purported contract dated July 14, 1937. It relies on the letter written by McTigue with defendant's permission on September 14, 1937. Whether there was a ratification was a question of fact. The facts were those contained in said letters. The construction of those letters rested with the trial court. Unless that court abused its discretion its construction may not be disturbed by this court. The trial court made an implied finding that the purported contract was not ratified. Reading the two letters together we find nothing therein that is at variance with the implied finding. On the other hand we agree with the findings as made by the trial court.

Again, the plaintiff contends (1) that defendant is estopped under the doctrine that quiescence is tantamount to acquiescence and (2) that a promissory estoppel is raised against defendant. The latter replies that the plaintiff's contentions are not supported by the evidence and that an estoppel was not an issue made by the pleadings. Both replies are sufficient. As soon as Mr. Buck, the president of the defendant corporation, was advised of the claim of the plaintiff, he repudiated the purported contract of July 14, 1937, and, as stated above, the court found that no such contract was made. At the time of the repudiation, the purported contract remained wholly executory. At the time of the repudiation the parties, by their correspondence, agreed that the defendant should take the 500 tons of corn, examine it, accept such as was marketable, and pay therefor the market price. The defendant fully performed that agreement. The settlement of the question about a different price having been set by the purported contract of July 14, 1937, was expressly reserved. The record contains no set of facts showing an estoppel against the defendant. The plaintiff cites and relies on *Hanna State & Savings Bank* v. *Matson,* 53 Wyo. 1 [77 Pac. (2d) 621, 625], and *Porter* v. *Commissioner of Internal Revenue,* 60 Fed. (2d) 673, 675. Neither case states any rule contrary to what we have said.

The last point made by the plaintiff is that the trial court erred in rejecting some offered testimony. Walter E. Buck, president of the defendant corporation, was called by

the latter as a witness. On cross-examination counsel for the plaintiff read to the witness a long paragraph contained in the answer of the defendant and stated as follows: " 'In this connection said defendant alleges that, for the purpose of minimizing damages and under the express agreement that same would be without prejudice to its rights and not an admission of liability under the alleged contract referred to in Paragraph III of said complaint, defendant purchased from plaintiff, and accepted and paid for, at the market prices prevailing at the respective times of deliveries, five hundred tons of corn, on or about the respective dates set forth in said Paragraph IV of said complaint, for which it paid to plaintiff the total sum of sixteen thousand seventy-four dollars.' And I call your particular attention to the fact that it alleges an express agreement. Is the answer incorrect in alleging that there was an express agreement at that time?" An objection was made that the question called for the conclusion of the witness. The trial court sustained the objection, saying: "It is for the court to find as to whether or not there was an express agreement, under all the evidence in the case." That ruling was clearly correct. (11 R. C. L. 565; *Schuh* v. *Oil Well Supply Co.*, 50 Cal. App. 588, 590 [195 Pac. 703]; *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 427 [213 Pac. 42, 26 A. L. R. 123].)

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.