[Civ. No. 28567.   Second Dist., Div. Two.   June 24, 1965.]

UNITED STATES CREDIT BUREAU, INC., Plaintiff and Appellant, v. JOHN M. CHENEY, Defendant and Respondent.

Bowles, Bletz & Lawson and Brinton N. Bowles for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

ROTH, P. J.—Appellant, the assignee of Southern California Edison Company (Edison), brought this suit to recover money owed for electric power furnished to respondent John M. Cheney. Appellant was awarded judgment for power fur-

nished to Ranch 1. The claim for power supplied to Ranch 2 was denied. This appeal is from the judgment denying appellant recovery for any money owed for power supplied to Ranch 2.

The complaint was filed against John M. Cheney and Milford Cheney. John is the son of Milford. Milford had, prior to the trial, gone into bankruptcy and was insolvent. Milford was retained as a defendant in the action to enable appellant to examine him under section 2055 of the Code of Civil Procedure. Prior to judgment, the action was dismissed as to him.

The record shows that on March 24, 1958, an application for power to be supplied for respondent John M. Cheney's ranch property (Ranch 1) was filed with Edison by respondent's father, Milford Cheney. The application was signed "John M. Cheney by Milford Cheney, Partner." Milford testified he was asked by the Edison employee to add the designation "partner." There is no evidence showing that respondent had knowledge of the use of the word "partner." On December 1, 1958, Milford filed a second application for power to be furnished to a different parcel of land (Ranch 2) which had been leased to Milford. There is no evidence showing that John had any interest in this property. The second application was signed "John and Milford Cheney by Milford Cheney." The same Edison employee accepted both applications.

Respondent admitted that he authorized his father to sign for him on Ranch 1, although he denied that he authorized him to sign as "partner." He paid the electric bills for the power supplied by Edison to Ranch 1 between March and December 1958.

The trial court found that respondent and his father did not operate Ranch 2 as partners or in any joint capacity except that respondent worked on Ranch 2 from time to time for his father. The court further found that respondent did not authorize his father to sign the second application; that since the word "partner" was missing from the second application, it was the duty of Edison to verify Milford Cheney's authority to sign the second application; "That as to 'Ranch No. 2' it was the responsibility of [Edison] to make some sort of a check to determine whether MILFORD CHENEY had the authority to sign for his son and co-defendant, JOHN M. CHENEY, and further, that MILFORD CHENEY, as to 'Ranch No. 2,' never did have the authority to bind his son and co-

defendant, JOHN M. CHENEY, and that by reason thereof there is no liability on the part of the defendant, JOHN M. CHENEY, to pay for the electrical bills incurred in the operation of 'Ranch No. 2.' "

■ The record is of a dubious character but there is testimony of John and Milford and the fact that the lease to Ranch 2 was in fact made to Milford alone, which sustains the findings. The trier of facts had all the witnesses before him and was in a much better position to find the facts than is this court.

■ It is settled that findings of fact by the trial judge, when made on conflicting evidence, and/or conflicting inferences which may be drawn from evidence, are binding on this court. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] ; *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757].)

Appellant urges that there was ample evidence to show ostensible authority on the part of Milford as a matter of law, since there was no showing of any kind that respondent ever gave actual or any notice to Edison of the revocation of the authority his father had exercised as to Ranch 1.

■ It is settled that "ostensible authority arises as a result of conduct of the principal which causes *the third party* reasonably to believe that the agent possesses the authority to act on the principal's behalf. [Citations.]" (*Tomerlin* v. *Canadian Indemnity Co.*, 61 Cal.2d 638, 643 [39 Cal.Rptr. 731, 394 P.2d 571] ; Civ. Code, § 2300.) ■ Ostensible authority may be established by proof that the principal approved prior similar acts of the agent. (*Thompson* v. *Machade,* 78 Cal. App.2d 870, 878 [178 P.2d 838] ; *Dunlap* v. *Dean,* 109 Cal. App. 300, 308 [292 P. 991] ; *Siquig* v. *West Coast Pickle Co.,* 161 Cal.App.2d 254, 257 [326 P.2d 596] : *Transmarine Corp.* v. *R. W. Kinney Co.,* 123 Cal.App. 411, 424 [11 P.2d 877].)

The latter rule rests upon the proposition that the third person reasonably or justifiably held a belief engendered by conduct of the principal that the agent had the assumed authority. (*South Sacramento Drayage Co.* v. *Campbell Soup Co.,* 220 Cal.App.2d 851, 856 [34 Cal.Rptr. 137].)' Thus, it has been consistently held "with regard to ostensible authority . . . that, if the principal clothes his agent with such authority, a person dealing with the agent, in the absence of any conduct on the part of either principal or agent warranting inquiry, if entitled to rely upon that apparent authority. . . ." (*Myers* v. *Stephens,* 233 Cal.App.2d 104, 115 [43 Cal.Rptr. 420].)

When the conduct of the principal warrants further inquiry or when the third party is dealing with an assumed agent, the third party is bound at his peril, if he would hold the principal liable, to ascertain not only the fact of the agency but the nature and extent of the authority. (*Myers* v. *Stephens, supra*; *South Sacramento Drayage Co.* v. *Campbell Soup Co., supra*, 220 Cal.App.2d 851, 857; *La Malfa* v. *Piombo Bros.*, 70 Cal.App.2d 840, 844 [161 P.2d 964].)

The facts at bench are susceptible to the construction that Edison acted at its peril when it assumed Milford Cheney's authority instead of ascertaining the extent thereof. Assuming, as we must, the veracity of Milford's testimony, Edison was alerted to the fact that he was acting as the special agent of respondent at the time he made the application for Ranch 1 on John's behalf. (Civ. Code, § 2297.) When Milford returned approximately eight months later and sought to obtain electric power for Ranch 2, he signed the application in a manner different from the first application. In these circumstances we cannot conclude as a matter of law that Edison reasonably held, or justifiably held a belief, engendered by respondent's conduct as to the first application in respect of Ranch 1, that Milford had the authority to bind respondent on a second contract, involving a separate piece of property in which John had no interest. The facts, as found by the trial judge, indicate that Edison assumed that Milford was respondent's agent for all purposes without any conduct, which can be gleaned from the record, on respondent's part supporting such assumption, other than the fact that respondent recognized Milford's authority to sign for Ranch 1. The record does not show that any bills for power on Ranch 2 were either sent to or received by respondent, or mailed to an address occupied by respondent. Proof of one prior similar act standing alone may establish ostensible authority (*Post* v. *City & County Bank*, 181 Cal. 238, 244-245 [183 P. 802]; *Robinson* v. *Nevada Bank*, 81 Cal. 106, 109 [22 P. 478]). However, it does not conclusively establish ostensible authority as a matter of law. In view of the trial court's findings in the case at bench, we cannot say as a matter of law that there was insufficient evidence to inspire and impel some inquiry on the part of Edison. (*Kerr Gifford & Co.* v. *American Distilling Co.*, 35 Cal.App.2d 390, 395 [95 P.2d 694].)

The comment of Justice Schauer in his dissent in the very recent case in *People* v. *Davis*, 62 Cal.2d 791 at p. 802 [44 Cal.Rptr. 454, 402 P.2d 142] is peculiarly appropriate to the

record in this case. The justice says: "An appellate judge can merely read what a transcriber typed from what a phonographic reporter's notes reflect of what the reporter believed he heard. Perhaps an electronic recording device also recorded on disc or tape the sounds of the courtroom. But human reporter or electronic impression get only sounds; the attentive trial judge sees as well as hears. And as every experienced trial judge knows, that which he sees may well be more truth revealing than that which he hears."

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.