274

[S. F. No. 15082.   In Bank.—April 19, 1935.]

AMADIO TOSI et al., Appellants, v. NORTHERN CALI-
FORNIA BUILDING AND LOAN ASSOCIATION
et al., Respondents.

Thomas C. Nelson and Milton Newmark for Appellants.

Cross & Brandt for Respondents.

PRESTON, J.—Plaintiffs appeal from judgment for defendants. The word "defendant" will be used to refer to defendant Northern California Building & Loan Association, a corporation.

Plaintiffs, for the sum of $10,000, purchased a home in Mill Valley upon which there existed an encumbrance of $8,512.74, plus $159.62 interest, in favor of defendant. They made a $6,000 down payment, $1500 to be paid the owner for his equity and $4,500 to be applied toward discharge of the encumbrance. The remaining indebtedness they promised to pay in monthly installments of $100 or more, so as to retire the loan within a short period. All negotiations with respect to the transaction were handled through a real estate man named MacArthur, whom plaintiffs first approached upon their visit to Mill Valley in search of a purchasable home. MacArthur represented to them that he was the agent of the encumbrancer and that all payments could be made to it through him. Plaintiffs never questioned this representation and did not even know or inquire as to the name of said encumbrancer. From October, 1928, time of purchase, to January, 1932, plaintiffs made to MacArthur periodical payments on account of principal and interest, sufficient in all to cancel their entire indebtedness. MacArthur thereupon acknowledged payment in full and gave plaintiffs a fictitious document which purported to be a duly recorded "deed of reconveyance". Plaintiffs accepted this document and believed themselves to be owners of the property free and clear of all liens.

In February, 1932, MacArthur disappeared under such circumstances that resulting publicity caused plaintiffs for the first time to apprise themselves of the name of the encumbrancer, defendant, and communicate with it, whereupon

it was discovered that MacArthur had failed to remit to defendant some $2,500 of the $6,000 down payment and numerous items of $25 or more from the monthly installment payments. According to defendant's records, MacArthur sent in for plaintiffs' account a total of $4,229.23, which was applied as received to principal and interest, leaving still due and unpaid a balance of $5,145.07. Defendant refused to acknowledge MacArthur as its agent or to accede to plaintiffs' demands for reconveyance, although this refusal appeared to be entirely inconsistent with defendant's course of conduct throughout the transaction and the dealings between the parties.

In April, 1932, plaintiffs filed their complaint herein for the purpose of compelling a cancellation of the encumbrance. Issue was joined and the cause went to trial. The evidence was without substantial conflict. From it the court concluded that at all times and in all matters connected with the transaction, MacArthur acted solely as the agent of plaintiffs and that at no time was he the agent of defendant. Predicated upon a finding to this effect, the court gave judgment for defendant and plaintiffs appealed. The issue on appeal is whether the evidence supports said finding of agency. We are of the view that it does not and that the judgment must therefore be reversed.

■ Section 2307 of the Civil Code provides: "An agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification." Section 2311 of said code provides: "Ratification of part of an indivisible transaction is a ratification of the whole." Although in this case MacArthur may not have been expressly authorized to act for defendant in the first instance, it is clear that in the course of this indivisible transaction and in making the collections from plaintiffs, he became the agent of defendant. Furthermore, the evidence establishes a later express agency which, under elementary principles of ratification, effectively estops defendant to deny authority for earlier acts in the same transaction.

Indisputable proof to support the conclusion just announced is found in the following: Plaintiffs' exhibit 3, a ledger card of defendant covering this loan, showing insertion thereon of plaintiffs' name in place of that of the former owner and entry of collections from MacArthur, including an item of $75 received on May 23, 1929. Plain-

tiffs' exhibit 6, which is a letter from defendant to Mac-Arthur, dated May 29, 1929, acknowledging receipt of a check covering various collections made by MacArthur for defendant, including the $75 item just mentioned, which letter reads in part:

"Dear MacArthur: Enclosed herewith our check No. 8442 in the amount of $2.67 being 1% of the amount of collection check which we received today. It is our custom to pay this to people *who make collections for us* and this fee will continue to be paid you as long as you do said collecting . . . ''

The above arrangement, whereby defendant paid Mac-Arthur a fee of one per cent for making collections for it continued from May, 1929, to November 29, 1930. In this connection the secretary of defendant corporation testified that during the period from October, 1928, to February, 1932, MacArthur was sending over other payments on loans and he thought MacArthur handled nine loan accounts in the way of sending over money.

During said period MacArthur handled numerous other dealings for defendant with people in Mill Valley. He had minor work done on homes or gardens and handled loan applications and appraisements for defendant. Defendant's president testified: " . . . where he didn't get the money in before the end of the month, and Mr. Taylor (defendant's secretary) hounded him for not getting it over—he had some collections—and he brought it over, and I told him, 'Well give him one percent as a kind of collection expense to recompense him for little odds and ends he did for us in that way' ''. As a rule, MacArthur would send over one check to cover collections with a statement as to how the items should be allocated. Defendant "used to urge" Mac-Arthur to get money over to it, sometimes by phone and sometimes by letter. In all, plaintiffs produced upon the trial some twelve exhibits, records and letters passing between MacArthur and defendant, which established a continued course of conduct and dealings between them admitting of no other conclusion than that defendant recognized MacArthur as its agent, either directly or by adoption and ratification of acts done in that capacity, in such manner that defendant may not now be permitted to deny the relationship to the injury of persons, such as plaintiffs, who dealt with MacArthur as such agent.

■ There is no merit in the contention that the doctrine of ratification is not applicable because defendant knew nothing of the sale to plaintiffs. Defendant was apprised of the sale by the former owner and saw the indorsement on fire insurance policies as well as the deed from said owner to plaintiffs and it wrote plaintiffs' name on its ledger card. It also knew that MacArthur was collecting from plaintiffs for its loan account and that it was compensating him part of the time for this collection service. ■ Plaintiffs believed MacArthur was defendant's agent; they paid him no commission. They were warranted in assuming that if the encumbrancer was not receiving the installment payments in proper amount when due, it would communicate with them. They could not think that in such case the encumbrancer would permit them to remain, over a long period, in peaceful and unquestioned possession of the home. When MacArthur reduced the monthly remittance to defendant on plaintiffs' loan from $100 to $75, defendant did not communicate with plaintiffs although it knew they had planned to retire the indebtedness within a short period. There was no circumstance which should have put plaintiffs on notice that MacArthur might not be acting in good faith.

This is not true of defendant for it had received ample warning of MacArthur's predilection for evasive and fraudulent dealing. In January, 1931, a year before plaintiffs thought they had paid their account in full, MacArthur and his wife met with defendant's officers to discuss the disclosure that four other loans which defendant had made in Mill Valley were irregular and the transactions fraudulent. The outcome of this meeting was that, to cover their fraud, MacArthur and his wife executed to defendant four promissory notes in amount of the four fraudulent loans and promised to give them as security therefor assignments of life insurance, etc. Subsequent letters passing between defendant and MacArthur show that defendant was endeavoring to protect itself from loss on account of these frauds by permitting MacArthur to carry on his business uninterruptedly and continue to make collections for it, in order that he might get in a position to pay said personal notes given to cover the fraud. In fact, defendant did not succeed in securing from MacArthur said assignment of insurance until September or October, 1931. With all this knowl-

edge, defendant failed to investigate the condition of the other loans, including plaintiffs', which MacArthur was handling for it and failed to take any steps whatsoever to guard against further fraud. In this connection the trial court said: "I am satisfied that this discovery of the defalcation of MacArthur was made in January . . . and the company had some notice that this man was crooked . . . and they were trying to protect themselves . . . and I will find that to be a fact if it is necessary. . . . This is admitted: that the Building & Loan in January, 1931, knew that MacArthur was crooked in at least four deals, and that they did not notify this plaintiff. . . . They took whatever assets they could to make themselves whole, and that has been proved."

The evidence is susceptible of no other construction than that MacArthur was expressly authorized to make collections for defendant from plaintiffs from May, 1929, to November, 1930, and that, upon principles of ratification and estoppel, this express employment constituted a ratification of the entire indivisible transaction.

The judgment is therefore reversed.

Shenk, J., Curtis, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied.

Shenk, J., and Thompson, J., voted for a hearing.