[Civ. No. 6825. Third Dist. Apr. 19, 1943.]

CHARLES FREDERICK GAINE, Appellant, v. DOROTHY ST. LOUIS AUSTIN, et al., Respondents.

252

Clark, Nichols & Morton, Clark, Nichols & Eltse and Nelson & Ricks for Appellant.

Mahan & Mahan, Blaine McGowan and Carl L. Christensen, Jr., for Respondent.

ADAMS, P. J.—Plaintiff herein sought to foreclose a mortgage given by Mary Costa to secure her promissory note for $7,400 executed October 6, 1930, to Wilhelmina C. Zehndner, and a renewal note and mortgage executed on October 6, 1935. Plaintiff's complaint alleged that defendants Dorothy St. Louis Austin and her husband, W. G. Austin, had acquired title to the property secured by said mortgage, and that they had mortgaged same to defendant Riella, but that Mary Costa's notes and mortgages had never been paid and satisfied, and that the rights of defendants in the property mortgaged were inferior and subordinate to the rights of plaintiff.

Defendants answered alleging that the notes described in plaintiff's complaint had been paid and the mortgages therein referred to fully satisfied; that Mary Costa had by deed transferred a portion of the lands described in said mortgages to defendant Dorothy St. Louis Austin who was the owner thereof subject to the mortgage of defendant Riella, and that said Mary Costa was the owner of the remaining portion of said lands. Defendants also filed a cross-complaint seeking to quiet their title against all claims of plaintiff and praying for a decree that the notes and mortgages had been fully paid, satisfied and discharged. The action was tried by the court, sitting without a jury, findings favorable to defendants and cross-complainants were filed, and a judgment for them entered as prayed. Plaintiff has

appealed, contending here that the findings are not sustained by the evidence.

For a clear understanding of the case, a somewhat lengthy recital of the facts seems essential, though we are mindful that on appeal we are to disregard conflicts of evidence, accept as true evidence supporting the findings, and draw all reasonable inferences which tend to support the judgment of the trial court. (*Burgess* v. *Security-First National Bank*, 44 Cal.App.2d 808 [113 P.2d 298].)

The evidence shows that after the original note and mortgage of October 6, 1930, had been executed Wilhelmina C. Zehndner died, and said note and mortgage were distributed to plaintiff and his wife, Emilie H. Gaine, together with notes and mortgages executed by one Dias and one Nixon; and by the same decree of distribution certain real property, consisting of a part of what was known as the Zehndner Block, in Arcata, Humboldt County, was distributed to the minor son of plaintiff, plaintiff thereafter managing same as guardian of the son's estate. While the Costa note and mortgage were acquired by both plaintiff and his wife, plaintiff conveyed his interest therein to his wife, but at all times thereafter acted for her in all transactions involving same, and his acts were ratified by her. She reconveyed to him just prior to the institution of the present action.

One Casper N. Torp, of Arcata, was attorney for the administrator of the Zehndner estate, and subsequently, and up to the month of August, 1937, he acted as attorney for the Gaines in various matters relative to the above-mentioned property in Arcata, the business transacted consisting in trying to collect, and in some instances collecting, interest on the three mortgages, the preparation of leases of buildings in the Zehndner Block, and the renewals of the three mortgages. As the Gaines lived in Oakland there was considerable correspondence between Torp and plaintiff in connection with these matters; there were also personal conferences when plaintiff visited Arcata. As the relationship between the Gaines and Torp as principals and agent is the real issue in the case we shall set forth rather fully the substance of their correspondence.

Mary Costa experienced difficulty in meeting her interest payments, and on March 9, 1934, she wrote to the Gaines stating she had a purchaser for three acres of the land mort-

gaged, and asking their consent to sell, the amount received to be paid on the mortgage. Plaintiff thereupon wrote to Torp asking him to ascertain if such a sale would impair the value of the remaining acreage and what would constitute a fair price per acre. To this letter Torp replied, advising that he had gone out to see Mrs. Costa relative to the sale of her property and had found that she did not have a definite offer and had not named a price; also that she would rather sell enough to pay off the whole mortgage.

On November 15th plaintiff wrote to Torp, enclosing the Mary Costa mortgage, saying:

"Mrs. Costa has requested a renewal and I informed her that I would forward the papers and the information to you. You may interview her and arrange for the renewal on the following basis. . . . I will send the three notes to you, Dias, Costa and Nixon, when I receive the new notes and mortgages."

On the same day plaintiff wrote to Mary Costa stating that he had forwarded to Torp the old mortgage and instructions regarding renewal, advising her of his terms, and saying: "If these terms meet with your approval you may arrange with Mr. Torp for the renewal." On November 27th plaintiff again wrote her demanding payment of interest, and concluding: "If we are going to have to wait for the interest each time it is due I will have to instruct Mr. Torp to make the new mortgage 6% the same as the old one was." On November 27th he wrote to Torp stating that he had not received the Dias, Nixon and Costa mortgages and asking what was causing the delay. On November 30th Torp replied, making reference to the Dias and Nixon mortgages and stating, as to Mrs. Costa, that she would have no money until she rented her place, but was to let him know in a few days.

On December 2nd plaintiff wrote Torp, making reference to the Dias renewal and stating:

"I will enclose the old notes for Nixon and Mary Costa and suggest that you send the satisfactions to us to be signed so that you may record the new mortgages for us. . . .

"I have wondered if Mrs. Costa has ever thought of selling her ranch. I don't know whether she could realize enough at this time to make it worth her while but if she is going to have difficulty obtaining good tenants it might be worth while offering the suggestion to her."

On December 16th Torp wrote plaintiff acknowledging receipt of "the old notes of Nixon and Mrs. Costa," and stating that as suggested by plaintiff he had prepared a release of the old mortgage against Nixon, and also a release of the old Costa mortgage, which it would be necessary for plaintiff to sign, and stating that on receipt of them he would have them recorded when the new mortgages were put on record. He made reference to Mrs. Costa's payment and further stated: "I have spoken, before, to Mrs. Costa about selling her place and she would like to do that if she can obtain a fair value for it, but the way property has been selling during the past few years she has been unable to find a buyer." On December 23rd plaintiff replied, enclosing the executed releases for the Costa and Nixon mortgages. The satisfaction of the Costa mortgage was dated December 20, 1935, and signed by both plaintiff and his wife.

On January 7, 1936, Torp wrote plaintiff that he had received the satisfaction of mortgage for Nixon and Costa, that the former had been recorded but that he would hold the latter until the new mortgage was executed.

On February 11th plaintiff wrote Torp stating that no interest had been received from Mary Costa and that this interest would have to be paid immediately or they would not be interested in the new mortgage. In a letter of February 14th Torp forwarded to plaintiff the Dias and Nixon mortgages and stated that he would do his best to close the Costa mortgage within a few days. To this letter plaintiff replied, stating that if it were not possible for Mary Costa to make payment, "we had better consider some other form of settlement."

On July 25th Torp wrote plaintiff stating that he had talked with Mrs. Costa but that she was unable to make payment until she had collected for her hay, that she was still endeavoring to sell her place, and the day before had brought a party into the office who would like to buy it and assume the mortgage, but that this buyer would not be able to pay anything on the principal. He concluded, "Trusting that I may hear from you relative to this matter so that Mrs. Costa will know whether to negotiate with these people any further, I am. . . ."

On September 26th, in response to a letter from plaintiff dated July 14th, Torp advised that the sale of the Costa

property had not materialized, but that Mrs. Costa had arranged to rent for one year. Reply to this letter was made by plaintiff on December 12th, wherein he stated: "We are determined that this matter shall be disposed of definitely and am instructing you now to proceed with it. If there is any possibility of Mrs. Costa doing anything soon you may wait until Jan. 2nd 1937 but no longer."

On January 2, 1937, Torp again wrote plaintiff stating that he was advised that Mrs. Costa had deposited six months' interest with the bank to apply on plaintiff's mortgage; that Nilsen, who had purchased her hay, had not yet sold same but had guaranteed that when sold the money would be paid to plaintiff; also that Mrs. Costa would receive her rent in April and thought that the whole matter could be cleared up by that time. He then inquired whether, under these circumstances, plaintiff wished to let the matter rest until April.

On February 23rd Torp wrote plaintiff advising that a man had called upon him relative to buying the Costa place and had requested Torp to write plaintiff in regard to discounting the mortgage for a cash settlement. On March 10th Torp again wrote stating that the prospective buyers of the Costa property had been in several times to see if Torp had heard from plaintiff relative to a reduction of the amount due on the mortgage if cash were paid; and he asked that plaintiff advise him whether he cared to make any proposition in that respect. On March 12th Gaine replied, acknowledged receipt of Torp's letters of February 23rd and March 10th, and stated:

"We are agreeable to an adjustment of the Costa matter only to this extent. We will accept $7500.00 as full settlement of principal and interest. . . . We will allow an adjustment of $529.87 or $7500.00 net. If this deal does not materialize we are not inclined to show Mrs. Costa any more leniency and want you to proceed with the foreclosure as quickly as possible."

On April 6th Torp wrote plaintiff: "Your letter of the 12th of March, stating that you would accept $7,500 in full settlement of the Mary Costa mortgage, was received. This is a very substantial reduction and Mrs. Costa is very grateful to you as it enables her to make this sale and gets her out of debt." He then went on to say that the sale was to have been closed the preceding Saturday and the buyer was ready to pay over the money, but that a little difficulty had been

encountered regarding a boundary line and the title company was unable to write the description of the twenty acres being purchased until that matter had been adjusted. He added:

"I still have the satisfaction of mortgage that was signed by you and Mrs. Gaine when we were trying to adjust this mortgage before, and the same can be used now without making it necessary to prepare a new one. I am sorry this matter is running past the sixth of this month but this time Mrs. Costa is in no way to blame. However, I thought it best to drop you a line today so that you will know the transaction will be closed in the very near future."

On April 19th plaintiff wrote Torp: "I trust that the deal is going thru, as originally planned. Please let me know just what the status of this matter is."

On the same day Torp wrote to plaintiff, stating that the transaction for the sale of a portion of the Costa property had been closed, but that in order to clear the title the title company had instructed that proceedings to quiet title be instituted. He added: "The papers have all been executed and the buyers have placed $7500.00 with me in escrow to be paid to you as soon as the title is cleared." Apparently plaintiff made no reply to this letter and gave Torp no instructions about the money.

The sale of a portion of the Costa property referred to in the above correspondence was made to Mrs. Dorothy St. Louis Austin, one of the defendants in this action. The evidence shows that in January, 1937, learning that the property might be for sale, she went to see Mrs. Costa who told her there was a mortgage on the place. Her husband, defendant W. G. Austin, and her father, Eugene St. Louis, had previously visited the premises, and Mrs. Costa had referred them to Torp, as also had Mr. Sorensen at the bank who told them that Torp handled Gaine's business in Arcata. They went to see Torp and asked him if he handled Gaine's business, and when he said that he did, asked if it would be possible to have the mortgage reduced. Torp said he would write to or confer with Gaine, and subsequently told them that Gaine would take $7,500, that he had all the papers from plaintiff and was ready to do business. In the meantime Mrs. Costa had agreed to $7,600 as the price of the 20 acres to be purchased and they had paid her $50 on account.

On April 10th, Mrs. Austin, her husband and her father

went to Torp's office, paid him the sum of $7,550, and received from him the note and mortgage of October 6, 1930, the satisfaction of same executed by plaintiff and his wife, the renewal note and mortgage of October 6, 1935, which had never been recorded, and a deed executed by Mrs. Costa which Torp had previously prepared and had executed by Mrs. Costa. Payment by Mrs. Austin was made by four checks one of which was drawn by defendant Riella payable to Mr. St. Louis, and endorsed by him over to Torp, another was Mr. St. Louis' check, and the other two were drawn by Mrs. Austin on two different bank accounts, and made payable to Torp. The $3,000 check of Riella represented a loan of that amount, made by the latter, which was secured by a note and mortgage drawn by Torp, and executed by Mrs. Austin, for preparing which Mr. St. Louis paid Torp $6. Mrs. Costa's note was endorsed by Torp: "Paid April 10, 1937. Casper N. Torp, Attorney for Emilie H. Gaine."

After delivery of the papers to Mrs. Austin, Torp said that he would have the satisfaction of mortgage recorded, and it was handed back to him for that purpose. He also told them that certain defects in the title had been discovered, but that Mrs. Costa would pay for having the title cleared. He prepared an agreement to that effect, and Mr. Austin took it to Mrs. Costa and secured her signature, she being ill and unable to appear. Torp subsequently filed suit to quiet title, the action being prosecuted in Mrs. Austin's name since the title was then in her. He gave Mrs. Costa $50 out of the amount received by him, and appropriated the remainder to his own use. He did not record the satisfaction of mortgage, and, after his conversion of the money was discovered, turned it over to the title company, which in turn gave it to plaintiff.

Defendants claimed at the trial that this evidence established that in receiving the $7,500 which plaintiff had agreed to accept in payment of the note and mortgage, Torp acted as the attorney for and agent of Mrs. Gaine, and that payment to Torp constituted payment to her and a complete satisfaction and discharge of the indebtedness of Mary Costa to said Emilie H. Gaine. The trial court so found, stating in its findings:

". . . that said payment was made by said Mary Costa to one Casper N. Torp . . .; that at the time of said payment to said Casper N. Torp and in receiving said payment, said

Casper N. Torp was acting as attorney and agent for said Emilie H. Gaine . . . and had theretofore been, and at the time of receiving said payment was, expressly authorized and impliedly authorized by said Emilie H. Gaine . . . to receive and did receive said payment for and on behalf of, and as agent and attorney for said Emilie H. Gaine . . .; that prior to the time of the making of said payment, said Casper N. Torp had been and at the time of the making and of his receiving said payment was, expressly and impliedly authorized to receive said payment in full payment, satisfaction and discharge of said promissory notes and mortgage, and did receive said payment of said sum of $7500.00 in full payment, satisfaction and discharge of said promissory notes and mortgage; that in making said payment to said Casper N. Torp said defendant Mary Costa did make said payment to said Emilie H. Gaine . . . and did thereby make said payment in full payment, satisfaction and discharge of said promissory notes and mortgage, . . .''

On this appeal plaintiff contends that the finding of the trial court as to Torp's agency is not sustained by the evidence, that neither express nor ostensible agency was shown, and that there was no evidence of ratification of Torp's acts by the Gaines; that Torp was acting as agent of the seller rather than the agent of Gaine. His principal argument is that as the Austins had no communication with Gaine prior to the sale, and had not been shown any letters or other communications between Gaine and Torp, an element of ostensible agency was lacking.

We believe that the evidence is sufficient to show not only ostensible but actual agency of Torp for plaintiff. He acted for Gaine not only in the Costa matters, but apparently in all his dealings in regard to the Nixon and Dias mortgages, and the rentals of the Zehndner Block. He at times received money from Dias and Mrs. Costa for interest, and forwarded same to plaintiff, who at no time objected to his so doing. Torp himself testified that he gave receipts as attorney for Mrs. Gaine, that it was his understanding that he was acting as plaintiff's attorney in his dealings in regard to the sale and in handling the money received by him; that said money came into his hands as attorney for Mrs. Gaine. And the correspondence between plaintiff and Torp itself certainly supports an inference, to say the least, that Torp was the

agent of plaintiff and his wife in the matter, which inference the trial court was authorized to draw. ▮ Agency may be implied from the facts of a particular case, and if a principal by his acts has led others to believe that he has conferred authority upon an agent, he cannot he heard to assert, as against third persons who have relied thereon in good faith, that he did not intend to confer such power. (*Safeway Stores* v. *King Lumber Co.*, 45 Cal.App.2d 17, 22 [113 P.2d 483].)

▮ The evidence further shows that if Torp merely assumed authority to act, neither plaintiff nor his wife at any time repudiated Torp's authority, and after the latter had advised plaintiff on April 6, 1937, that he had the satisfaction of mortgage formerly executed which could be used in connection with the sale, and after he had been told by Torp that the latter was in possession of the $7,500, no objection was made; and it was not until August, 1937, that plaintiff notified Torp that he was not to be his attorney in any further matters. ▮ While it was not necessary in this case to establish ratification by the principal, since there is ample evidence of actual agency, ratification could well have been implied. Quiescence is tantamount to acquiescence. (*Ford* v. *Lou Kum Shu*, 26 Cal.App. 203, 210 [146 P. 199]; *Bissell* v. *King*, 91 Cal.App. 420, 428 [267 P. 356].)

▮ Section 2299 of the Civil Code provides that an agency is actual when the agent is really employed by the principal. It is not denied by plaintiff that Torp was actually employed by him, but he contends that he was not authorized to receive moneys for him. However, section 2315 of the Civil Code provides that "An agent has such authority as the principal, actually or ostensibly, confers upon him," and section 2316 provides that actual authority is such as a principal intentionally confers upon the agent, or intentionally, *or by want of ordinary care,* allows the agent to believe himself to possess; and if plaintiff did not intentionally confer authority on Torp to receive said moneys and deliver the papers in his possession to the Austins, he allowed Torp to believe himself possessed of such authority. The suggestion that Mrs. Costa should sell originated with plaintiff, through Torp he advised the parties he would accept, and he furnished Torp with the satisfaction of mortgage and other papers sufficient to close the deal. He admitted that he never advised Torp not to accept payment; and he never advised Mrs. Costa not to make payment to Torp.

■ An agent's authority may be proved by circumstantial evidence (*MacDonnell* v. *California Lands Inc.*, 15 Cal.2d 344, 347 [101 P.2d 479] ; *Sweet* v. *Watson's Nursery*, 33 Cal. App.2d 699, 704 [92 P.2d 812] ; *Smith* v. *Schuttpelz*, 1 Cal.2d 158, 161 [33 P.2d 836]) ; and it may likewise be implied from circumstances (*Robinson* v. *American Fish etc.* Co., 17 Cal. App. 212, 217-219 [119 P. 388] ; *Anglo-Californian Bank* v. *Cerf*, 147 Cal. 393, 399 [81 P. 1081]).

■ As to the ostensible agency of Torp, section 2300 of the Civil Code provides that ''An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him''; and under section 2317, ''Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.'' That the Austins and Mrs. Costa believed that Torp was the agent of plaintiff and his wife, with authority to act in the premises, is apparent. Mrs. Austin testified that they went to Torp and paid him the money because he had all plaintiff's papers to close the deal, and ''he was representing the Gaines.'' Mrs. Costa testified that before talking to the Austins about selling, she had talked to Torp to find out if Gaine would sell, that she told him to write to Gaine to see if he wanted to sell; that she told the Austins to do business with Torp because Gaine had written a letter to Torp to do all the business with him [Torp] —that Torp ''was the one that did all the business dealings with Gaine.'' And Mr. Sorensen at the bank also advised Mr. St. Louis and Mr. Austin to see Torp, as the latter ''handled Gaine's business in Arcata''; and Torp testified that when Mr. St. Louis came to see him he told him that he had the necessary papers to complete the deal and that he was acting as plaintiff's attorney in the matter.

Under these circumstances we cannot say that Mrs. Austin was not justified in believing that Torp was plaintiff's agent and possessed the authority to deliver the papers in his possession and accept payment of the mortgage for plaintiff.

■ The law forbids a principal to deny an authority of his agent where his own conduct has invited those with whom he was dealing to assume that the agent possessed such authority ; and where he has clothed the agent with apparent powers, strangers in dealing with the agent may assume that such

powers are possessed. (*Robinson* v. *American Fish etc. Co., supra.*) As in *Tosi* v. *Northern Calif. Bldg. etc. Assn.*, 3 Cal. 2d 274, 278 [44 P.2d 333], defendants believed that Torp was plaintiff's agent; they paid him nothing for his service; there was no circumstance that should have put them on notice that Torp might not be acting for plaintiff in good faith, and as was said in *Carter* v. *Rowley*, 59 Cal.App. 486, 489 [211 P. 267]:

"As between two innocent persons, one of whom must suffer, the loss should fall on the principal who has armed the agent with apparent authority and thus has enabled him to obtain the advantage of the person with whom he trades, rather than on the purchaser, where the agent acts within the apparent scope of his authority and there is nothing in the transaction to put the purchaser on notice that the agent is exceeding his authority."

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.