[Civ. No. 7276.   Third Dist.   Apr. 1, 1947.]

J. K. THOMPSON, Respondent, v. MANUEL T. MACHADO et al., Appellants.

Seth Millington for Appellants.

Clewe & Deahl for Respondent.

THE COURT.—Plaintiff, as assignee of Walter Jansen & Son, brought this action for the recovery of $1194.43, alleged to be the balance due upon an open book account for goods sold and services performed by Walter Jansen & Son for defendants. A second count was based upon an account stated for the same amount.

Defendant denied the allegations of the complaint and also pleaded the statute of limitations, Code of Civil Procedure, section 337, subdivision 2. A jury being waived, the cause was tried by the court and resulted in a judgment for plaintiff, on the first count only, against defendant Manuel T. Machado alone. From that judgment said defendant has prosecuted this appeal, contending that the evidence introduced by plaintiff is insufficient to show an open book account,

that even if it does it shows that plaintiff closed his account in 1939, and that, as the action was not brought until 1945, recovery was barred by the statute of limitations.

As for the first of these contentions, the evidence shows that during the time here involved, Walter Jansen & Son were engaged in the business of buying and selling grain and beans, the manufacture and sale of feeds, and the milling of grains. The bookkeeping system used by them was that used by banks and is known as the Burroughs Bookkeeping Machine System. Under that system when a sale was made or a transaction entered into, a tag, showing the items, was made in duplicate on a billing machine. One of these tags was given to the customer and the other was filed in the office. The following day the transactions shown by the tags were entered on what is referred to as a "hard sheet," comparable to a ledger leaf, which constituted a permanent record. Every month a statement was sent each customer, showing the debits and credits for the preceding month, and the debit balance. Testimony to this effect was given by Walter Jansen, general partner in the business of the company, who was in charge of same. It was corroborated by Edward Anderson who had worked for the company since 1933, and had been general manager since 1941, who also stated that he supervised the work of the bookkeepers. This witness identified the hard sheet showing Machado's account and said sheet was introduced in evidence as plaintiff's Exhibit 9. The testimony of these witnesses also showed that in 1940, the mill building and office of the company were destroyed by fire, the only records saved being some hard sheets which were in a safe. The sales tags were destroyed and the hard sheets did not show the specific items, but only the debits and credits. The hard sheet pertaining to Machado's account, which was among those saved, showed a balance of $1,371.07 brought forward in October, 1936, which was followed by debits and credits for the succeeding years, including August, 1943. The balance shown thereon at the end of 1939, was $1,194.43. No transactions were thereafter recorded until February, 1942, at which time entries were made showing a charge of $10.34 on February 11th, a charge of $7.70 on February 28th, and a credit of $18.04 on the latter date. On February 4, 1943, charges were made for $7.08 and $6.20, and on February 6th a credit for $13.28 was entered. On August 16, 1943, a further charge of $13.60 was made, and, on the same day

there was a credit for the same amount. The balance due was then, as in 1939, $1,194.43.

The rules as to what is admissible to prove such an account have been greatly liberalized by the enactment in 1941 of sections 1953e to 1953h of the Code of Civil Procedure, the "Uniform Business Records as Evidence Act." Section 1953f provides: "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." And section 1953g provides: "This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it."

In *Loper* v. *Morrison* (1944), 23 Cal.2d 600, 607 [145 P.2d 1], the Supreme Court said that the purpose of the said act was to enlarge the operation of the business records exception to the hearsay evidence rule; and that the object was to eliminate the necessity of calling each witness, and to substitute the record of the transaction or event; and that it is not necessary that the person making the entry have personal knowledge of the transaction; that cases decided before the aforesaid act became effective in this state are not controlling. Also see *Arques* v. *National Superior Co.*, 67 Cal.App.2d 763, 777 [155 P.2d 643]; *Doyle* v. *Chief Oil Co.*, 64 Cal.App.2d 284, 292 [148 P.2d 915]; *Barth* v. *Adelstein*, 66 Cal.App.2d 406, 408 [152 P.2d 498]; *H. F. Shepherdson Co.* v. *Central Fire Ins. Co.*, 220 Minn. 401 [19 N.W.2d 772, 777-778].

In *People* v. *Caldwell* (1942), 55 Cal.App.2d 238, 254 [130 P.2d 495] (hearing in Supreme Court denied), the court said that "In the case of the conduct of the business and affairs of an establishment, it is presumed that the regular course of business of such establishment is followed (Code Civ. Proc., § 1963, subd. 20) and that the books and records of an establishment truly reflect the facts set forth in such books (Code Civ. Proc., § 1953f)."

We are satisfied that under the authorities above cited there was sufficient proof of an open book account and that the records relied upon were properly admitted in evidence, since

the trial court was obviously satisfied that the sources of information, method and time of preparation were such as to justify their admission, and it is the duty of the courts to so construe the Uniform Business Records as Evidence Act as to facilitate and not to hamper the effectuation of its purpose. It is a matter of common knowledge that many business firms employ the system used by Walter Jansen & Son, making tags at the time of a sale or transaction, giving the customer a copy of such tag and filing the original, entering the debits and credits on hard sheets instead of in a bound ledger, and sending a statement to the debtor each month.

As for the correctness of the account, that was a matter of fact for the trial court which is not without support in the evidence. Machado admitted doing business with the Jansens between 1935 and 1939. He was sent monthly statements none of which was returned, and he admitted receiving some of them, and produced 21 of such statements. Defendant pointed out no item of charge prior to 1942, which he could dispute, and while he testified that before the death of the manager, Mr. Fowler, he asked him for an itemized statement because he thought that he was being charged for things that he did not get and asserts that he never saw any of the duplicate tags issued by the company, he did not ask to see the originals on file, and did not make any protests regarding the balance due appearing on his monthly statements to anyone other than Mr. Fowler, either before or after the latter's death. His veracity and the weight to be given his testimony were matters for the trial court alone. Plaintiff's witness Anderson testified that he had himself delivered feed to Machado's ranches on more than one occasion, and that copies of invoices covering the purchases were left with the products delivered, usually under the top sack.

As for appellant's contention that plaintiff's action was barred by the statute of limitations, he asserts that the entries on the company's books pertaining to transactions in 1942 and 1943, were not authorized by or known to him, and that such entries cannot, therefore, be relied upon to toll the statute. The testimony shows, regarding such transactions, that on February 11, 1942, defendant's son drove up to the Walter Jansen & Son plant in defendant's truck and brought 10,340 pounds of barley to be rolled. The charge for this, amounting to $10.34, was entered on defendant's account on the son's instructions to "charge it to the old man." On

February 28, 1942, the son again came to the plant in defendant's truck and had 7,700 pounds of barley ground at 10 cents per hundred, and the item of $7.70 was charged to defendant's account. On the same date, February 28, 1942, the aggregate of the two above items, viz., $18.04, was paid by a check signed by defendant in blank, in which the name of Walter Jansen & Son and the amount of the check were inserted by the son; and credit for the amount was entered on defendant's account. Next, on February 4, 1943, the son again came to the plant in defendant's truck and brought 7,080 pounds of rice screenings to be ground at 10 cents a hundred, and the charge of $7.08 was entered on defendant's account; and on the same date the son had 6,200 pounds of wheat ground at 10 cents a hundred, making $6.20, and the last two above items were charged on defendant's account in the aggregate sum of $13.28. On February 6, 1943, the charge of $13.28 was paid by the son with defendant's check. On August 16, 1943, defendant's account was charged with $13.60 and on the same day was credited with $13.60 paid with defendant's check.

Appellant does not contend that the foregoing transactions did not take place as shown by plaintiff's witnesses, but he asserts that there is no showing that they were ever authorized by him, or that the son was acting as defendant's agent; that the transactions were the son's; and that agency cannot be proven by the declarations of the agent not made in the presence of his principal or acquiesced in by him. However, other facts appear which, with the inferences that the trial court was authorized to draw therefrom, give support to the conclusion of the trial court that the son was acting as the agent of his father when the charges were made on defendant's account in 1942 and 1943. In support of the trial court's decision on the matter of agency, the evidence must be construed most strongly in favor of same, and the conflicting evidence disregarded. There is evidence that the son lived with his father, and worked for him, that the son had previously acted for his father, that the father himself had not previously acted for himself in his dealings with Jansen & Son, that defendant had never instructed that company that his son no longer had authority to act for him; that the son had no place of his own and did not raise oats, barley or rice, while defendant had two ranches upon which he raised those products; that the son owned no livestock other than two saddle horses

for which he obviously would not use the rice hulls or wheat that were ground, nor any such quantity of grain as he had milled. There are also the further significant facts that statements sent to defendant by the company showed transactions in the years 1942 and 1943, but defendant never disavowed them, though he said he always examined his monthly statements and checked them against previous ones, and that the checks with which these charges were paid were signed by defendant and made out to Walter Jansen & Son, and defendant said he always examined his cancelled checks when they were returned to him by the bank to ascertain the amounts thereof, to whom they were issued and for what. He therefore must have known that charges were made to his account and paid for with his checks in 1942 and 1943. Furthermore, one of the statements which he produced showed debits and credits for those years, yet he made no protest to the company about these items. In making his complaints to Mr. Fowler, who had died in 1941, he said that he thought he was being charged for stuff that he never bought, but he did not deny owing the company at least some part of the balance shown by the statements to be owing.

Section 2298 of the Civil Code provides that an agency is either actual or ostensible. Section 2300 of the same code provides that an agency is ostensible when the principal intentionally, *or by want of ordinary care*, causes a third person to believe another to be his agent who is not really employed by him. Section 2307 of that code provides that an agency may be created, and an authority may be conferred, by a precedent authorization *or a subsequent ratification*. Section 2317 of the same code provides that ostensible authority is such as a principal, intentionally or *by want of ordinary care*, causes or allows a third person to believe the agent to possess.

In view of the above code provisions, if defendant did not intend to do any more business with Walter Jansen & Son after February, 1939, since his son had previously transacted authorized business there for his father, defendant failed to exercise ordinary care in not notifying Walter Jansen & Son to make no more sales to nor render any further services for defendant and that all authority of anyone to act for him had been revoked. Defendant gave Walter Jansen & Son no notice relative to agency.

In *Bergtholdt* v. *Porter Brothers Co.*, 114 Cal. 681, 688 [46 P. 733], the court stated that agency and the extent of the

power of an agent are questions of fact which may be established by circumstantial evidence. (See, also, *Sweet* v. *Watson's Nursery*, 33 Cal.App.2d 699, 704 [92 P.2d 812] ; *Hazard, Gould & Co.* v. *Rosenberg*, 177 Cal. 295, 299 [170 P. 612] ; *Ferroni* v. *Pacific Finance Corporation of California*, 21 Cal. 2d 773, 779 [135 P.2d 569]).

In the latter case at page 779 the court said: "Unquestionably, under the circumstances here present, evidence of a prior course of dealing between appellant and the partnership in similar transactions would be relevant on the question of an agent-principal relationship between them, and that appellant was authorized as such to make the contract on behalf of the partnership. An implied agency relationship may arise from the words and conduct of the parties and the circumstances of the particular case. [Cases cited.]"

In 2 Corpus Juris, section 713, page 947, it is said: "As proof of agency, a previous course of dealing, sanctioned or ratified by the principal, is competent, as having a tendency to prove agency in the given case, although the jury must determine its weight for such purpose."

In the case of *Gaine* v. *Austin*, 58 Cal.App.2d 250, 261 [136 P.2d 584], we held: "An agent's authority may be proved by circumstantial evidence [cases] ; and it may likewise be implied from circumstances [cases]."

In *County First National Bank of Santa Cruz* v. *Coast Dairies & Land Co.*, 46 Cal.App.2d 355, 366 [115 P.2d 988], the court said: "The two essential elements of an ostensible agency are: (1) the third person must believe that the agent had authority; and (2) such belief must be generated by some act or neglect of the person or company to be held. (*Harris* v. *San Diego Flume Co.*, 87 Cal. 526 [25 P. 758].) Evidence that similar acts of the agent were approved by the principal establishes ostensible authority, if the other element of belief is present. (See cases collected and commented on in 1 Cal. Jur. p. 742, sec. 42.)"

Whether such agency existed in this case was a question of fact for the trial court. (*Stanhope* v. *Los Angeles College of Chiropractic*, 54 Cal.App.2d 141, 146 [128 P.2d 705] ; 1 Cal.Jur., § 139, p. 865.) In view of defendant's receipt of monthly statements into the year 1944, and that each statement showed debit and credit items for the preceding month, and the fact that defendant received and examined his

cancelled checks from the bank and some of these were used in the 1942-1943 transactions, it was the defendant's duty to notify Walter Jansen & Son that no one had authority to transact business for him if such was the fact, particularly for the reason that prior to February, 1939, the son had made authorized purchases.

In *Dunlap* v. *Dean,* 109 Cal.App. 300, 308 [292 P. 991], the court quoted from other authorities as follows: "The respondent in this case, upon receipt of the July statement, was under the necessity of acting promptly. The law as stated in the case of *Quinn* v. *Dresbach,* 75 Cal. 159 [7 Am.St.Rep. 138, 16 P. 762], is controlling in this case. We quote from the syllabus: 'Where a person is the agent of another in the commencement of a transaction, and such other is chargeable with knowledge that the first is continuing to act in the matter in some way, the inference which he ought to draw is that the person assuming to act as agent is continuing to act in the same capacity in which he commenced, and it is negligence not to repudiate the agency.' Here, it was simply a continuation of the former action, and the respondent is estopped by reason of his negligence in not immediately notifying the plaintiffs upon receipt of the July statement that the authorization theretofore given to purchase supplies and render him directly liable had been withdrawn."

When the son entered into the transactions in February, 1942, the account was not barred by the statute of limitations and had a little over one year more to run before becoming barred. Had defendant acted promptly upon receipt in March, 1942, of his statement from Walter Jansen & Son for the previous month showing debit and credit entries, and upon examination of his cancelled checks to Walter Jansen & Son for February, 1942, and notified Walter Jansen & Son that the transactions were not authorized by him, the company would have had almost a year longer within which to commence an action on the account. This seems to be a proper case for invoking the maxim set forth in section 3543 of the Civil Code: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

In *Ballard* v. *Nye,* 138 Cal. 588, 598 [72 P. 156], the court said: "We are mindful of the general rule that a party must have full knowledge of all the material facts before the doctrine of ratification can be applied. 'Ignorance of such facts,

however, can avail nothing where it is intentional and deliberate, or where the circumstances are such as reasonably to put the principal upon inquiry.' (Mechem on Agency, sec. 148.) This general rule is intended to protect the vigilant, not to aid those who, advised by the situation and surroundings that an inquiry should be made, make none; and ignorance of the existence of facts which might have been ascertained with ordinary diligence, is no protection. Where the situation naturally and reasonably suggests that some inquiry or investigation should be made, and none is made, the person failing to make it will be deemed in law possessed of such facts as the inquiry would have disclosed.''

See, also, *Chain* v. *Ehrman*, 92 Cal.App. 334, 336 [268 P. 438], and 1 California Jurisprudence, section 71, page 780.

█ Also some significance may be attached to the fact that defendant's alleged protests that he thought he was being charged with more stuff than he got were made to no one other than Mr. Fowler, who was dead at the time of the trial. Such testimony is of the weakest kind, not only because it is that of an adverse party but because no one is left to dispute it (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 559-560 [299 P. 529]). The trial court was not compelled to accept the testimony of defendant if it was not satisfied with his veracity, and the record shows that such testimony was at times contradictory and his answers evasive.

The judgment is affirmed.

A petition for a rehearing was denied April 25, 1947, and appellants' petition for a hearing by the Supreme Court was denied May 29, 1947.