[Civ. No. 38140. Second Dist., Div. Four. Dec. 29, 1971.]

WILLIAM YANCHOR, Plaintiff and Appellant, v.
AL KAGAN, Defendant and Respondent.

## COUNSEL

Thomas E. Reeks, Sommers & Lakritz and Hubert R. Sommers for Plaintiff and Appellant.

Adachi & Hannig and Jack Hannig for Defendant and Respondent.

## OPINION

**DUNN, J.**—This is an appeal by plaintiff, upon a clerk's transcript, only, from an order granting the motion of defendant Al Kagan to enter satisfaction of a judgment previously entered in favor of plaintiff and against defendant Kagan. Such an order is appealable. (Code Civ. Proc., § 904.1, subd. (b); *Baum v. Baum* (1959) 51 Cal.2d 610, 614-615 [335 P.2d 481]. Distinguish: *Anderson* v. *Joseph* (1956) 146 Cal.App.2d 450, 452 [303 P.2d 1053].)

The action was commenced by plaintiff Yanchor March 8, 1967, against defendants William and Katherine Reid, respondent Kagan and others. In the complaint it was alleged that by reason of false representations made by the defendants, plaintiff had been induced to invest $15,071

in a land development project. He sought compensatory and punitive damages, as well as injunctive relief.[1]

The case was tried without a jury in July and August 1969. On September 4th judgment was entered in favor of plaintiff and against defendant Kagan for $18,811, plus costs.[2] Defendant's motion for a new trial was denied. Thereafter, from November 1969 to September 1970, plaintiff attempted to collect the judgment.

On September 10, 1970 defendant moved for an order vacating the judgment on the ground it was obtained by extrinsic fraud. In his declaration supporting the motion, defendant stated:

(1) In April or May 1967 defendant was advised by plaintiff that he had retained an attorney, Thomas Reeks, to recover money owed plaintiff by Mr. Reid. Plaintiff requested that defendant accompany him to Reeks' office to discuss the case, stating that defendant's testimony might be needed if a suit were filed. Defendant was assured that plaintiff did not intend to sue him, but only Reid. In reliance on this assurance, defendant met with plaintiff and Reeks. Reeks told defendant that he was counting on defendant's cooperation as a witness for plaintiff if suit were filed. He, too, assured defendant that he would not be named in any action against Reid. Defendant requested that this be put in writing, and Reeks promised to do so. On the strength of this promise, defendant discussed the case with Reeks and plaintiff on several occasions and agreed to become a witness for plaintiff if he sued Reid.

(2) Early in August 1967, Reeks sent defendant a document entitled "Agreement." It was signed by Reeks and stated that plaintiff would not enforce any judgment obtained against defendant in the lawsuit.[3] Defendant asked Reeks why the agreement provided that judgment would not be enforced, whereas he understood no suit would be brought against him. Reeks replied that even though plaintiff did not want to sue defendant, he would have to be named as a defendant because he was a necessary

---

[1]The cause of action for injunctive relief apparently was abandoned.

[2]Plaintiff also was awarded damages of $1,260 against the Reids for rents due. They paid this sum, and a satisfaction of the judgment was entered as to them, only. (Code Civ. Proc., § 675.)

[3]The full text of the agreement was as follows:

"FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, it is agreed that William Yanchor will not enforce any judgment obtained against Al Kagan, regarding Los Angeles Superior Court action No. 905,156, entitled William Yanchor v. William L. Reid, Al Kagan and others.

"Provided, however, that if Al Kagan fails to keep this agreement entirely confidential, that it shall immediately become null and void and of no effect.

"Dated: July 31, 1967.

"/s/ Thomas E. Reeks, Attorney for Plaintiff."

party; therefore, the agreement had been worded in terms of not enforcing the judgment in order to protect defendant. Reeks added that he was relying on defendant's testimony because without it, plaintiff "did not have a case." Defendant believed Reeks, and agreed to continue cooperating.

(3) In June 1969 Reeks served defendant with a copy of the summons and complaint. It was then he first discovered that he was a "defendant in the lawsuit." Reeks again told him that he had been named as a defendant only because he was a necessary party, that plaintiff had no intention of obtaining a judgment against him, and that Reid was the real culprit.

(4) Less than a week before the trial, defendant consulted an attorney and explained the situation to him. The attorney filed an answer for defendant and agreed to represent him for half the ordinary fee because he would not have to put on a defense. At the trial, defendant was called by plaintiff and testified (as if under cross-examination; Evid. Code, § 776) as an adverse witness. He did not take the stand in his own behalf, or put on any defense, because he was "thoroughly convinced" no judgment was being sought against him. At the conclusion of the trial, he was "aghast" to learn that judgment had been ordered against him. He reminded Reeks of the agreement. Reeks denied any knowledge of it and advised defendant to pay the judgment.

On the basis of these declarations, defendant had contended that he was prevented by "fraudulent acts" of plaintiff and Reeks from putting forth a defense at the trial. Defendant's motion to vacate the judgment was denied.

Defendant then successfully moved for an order to enter satisfaction of the judgment pursuant to Code of Civil Procedure section 675, basing his motion upon the grounds set forth in his declaration filed in support of his motion to vacate. Plaintiff appeals from the order granting this motion.

The trial court apparently concluded that appellant was bound by the agreement not to enforce the judgment, and that such agreement was equivalent to satisfaction of the judgment. Appellant contends the order cannot be sustained upon either of these grounds.[4]

---

[4]Appellant further contends that the court was without power summarily to determine the nature and effect of the agreement in ruling upon a motion for satisfaction of judgment made and resisted on the basis of declarations, and that respondent was limited to an independent action to enforce the agreement. These contentions are without merit. On a motion made under Code of Civil Procedure section 675, the court has jurisdiction to determine whether a judgment has been satisfied "in fact," if that issue is in dispute. See: *State Bank of Lansing* v. *McLaury* (1917) 175 Cal. 31, 33 [165 P. 7].

In his declaration in opposition to the motion, plaintiff-appellant stated without contradiction that he did not authorize Reeks to make the agreement, that he did not learn of it until after the trial, and that he had never approved it.

■ An attorney is an agent of his client (*People* v. *Gilbert* (1944) 25 Cal.2d 422, 443 [154 P.2d 657]), and the attorney-client relationship is governed by the rules applicable to the relationship of principal and agent in general. (*Moving Picture etc. Union* v. *Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 403 [86 Cal.Rptr. 33].) Hence, the client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied), or his apparent, or ostensible, authority. (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys § 107, p. 117.) Reeks did not have express authority to enter into the agreement. Neither did he have implied authority to do so, because the agreement resulted in the surrender of a substantial right of appellant, namely, the right to enforce the judgment. (*Bice* v. *Stevens* (1958) 160 Cal.App.2d 222, 231-232 [325 P.2d 244]; *Redsted* v. *Weiss* (1945) 71 Cal.App.2d 660, 663 [163 P.2d 105].)

Defendant-respondent contends appellant was bound, nevertheless, under the doctrine of ostensible authority, which is "such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.) Where ostensible authority exists, "[A] principal is bound by the acts of his agent . . . to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof." (Civ. Code, § 2334.) ■ Under these provisions, if a principal by his acts has led others to believe that he has conferred authority upon an agent, he cannot be heard to assert, as against third persons who have relied and acted thereon in good faith, that he did not intend to confer such power. (*Myers* v. *Stephens* (1965) 233 Cal.App.2d 104, 114-115 [43 Cal.Rptr. 420]; *Gaine* v. *Austin* (1943) 58 Cal.App.2d 250, 261 [136 P.2d 584].) ■ Thus, ostensible authority rests upon the doctrine of estoppel. (*Freitas* v. *Marsh* (1945) 70 Cal.App.2d 711, 713 [16 P.2d 565]; *County etc. Bk.* v. *Coast D. & L. Co.* (1941) 46 Cal.App.2d 355, 366 [115 P.2d 988].) Its essential elements are representation by the principal, justifiable reliance thereon by a third person, and change of position or injury resulting from such reliance. (*Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 451-452 [159 P.2d 958]; *Hartong* v. *Partake, Inc.* (1968) 266 Cal.App.2d 942, 960 [72 Cal.Rptr. 722]; *Reusche* v. *California Pac. Title Ins. Co.* (1965) 231 Cal.App.2d 731, 736 [42 Cal. Rptr. 262]; *Freitas* v. *Marsh, supra,* 70 Cal.App.2d at p. 713; *Fairbanks* v.

*Crump Irr. etc. Co.* (1930) 108 Cal.App. 197, 211 [291. P. 629, 292 P. 529].) Whether ostensible authority existed is a question of fact (*Barclay Kitchen, Inc.* v. *California Bank* (1962) 208 Cal.App.2d 347, 353 [25 Cal.Rptr. 383]; *House Grain Co.* v. *Finerman & Sons* (1953) 116 Cal. App.2d 485, 492 [253 P.2d 1034]), and may be implied from circumstances (*Gaine* v. *Austin, supra,* 58 Cal.App.2d at p. 261).

■ Defendant-respondent's declaration in support of the motion establishes all of the elements necessary to make the agreement binding upon plaintiff-appellant by the doctrine of ostensible authority. Thus: appellant urged respondent to discuss the case with appellant's attorney, Reeks, and took respondent to Reeks' office for that purpose; appellant and Reeks requested respondent's cooperation, assuring him that appellant did not seek recovery against him; when Reeks furnished the agreement not to enforce judgment, respondent was justified in believing that appellant had authorized Reeks to make the agreement; respondent relied on the agreement and therefore did not offer a defense at the trial.

Many of the statements in respondent's declaration were contradicted in the declarations appellant and Reeks filed in opposition to the motion. However, we must assume the trial court determined all conflicts in favor of respondent, and such determination of the controverted facts may not be disturbed on appeal. (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636]; *Griffith Co.* v. *San Diego College for Women* (1955) 45 Cal.2d 501, 507-508 [289 P.2d 476, 47 A.L.R.2d 1349].)

We now consider whether the agreement constituted satisfaction of the judgment within the meaning of Code of Civil Procedure section 675, which provides in part: "(a) Satisfaction of a judgment may be entered upon an execution returned satisfied, or upon an acknowledgement of satisfaction filed with the clerk or with the judge . . . which may recite payment of the judgment in full or the acceptance by the judgment creditor of any lesser sum in full satisfaction thereof . . . . *Whenever a judgment is satisfied in fact, otherwise than upon an execution, the party or attorney must give such acknowledgment . . . and, upon motion, the court may compel it, or may order the entry of satisfaction to be made without it.*" (Italics added.)

■ Unless it clearly appears that there was an actual satisfaction in fact, this provision does not apply. (*State Bank of Lansing* v. *McLaury* (1917) 175 Cal. 31, 32 [165 P. 7]; *Sager* v. *O'Connell* (1951) 107 Cal. App.2d 391, 394-395 [237 P.2d 59]; 29 Cal.Jur.2d 305-306, Judgments, § 324.) The language of section 675 indicates that satisfaction "in fact"

of a money judgment means full payment of the judgment by execution or otherwise, or acceptance by the judgment creditor of a lesser sum in full satisfaction of the judgment. ■ In his declaration supporting the motion for satisfaction of judgment, respondent did not state that the judgment was satisfied by payment. He relied exclusively upon the agreement not to enforce judgment. We turn now to consider the effect of the agreement.

A covenant not to execute is similar to a covenant not to sue, although differences are obvious. A covenant not to sue is not a release. Thus, even before enactment of our statutes concerning contribution among joint tortfeasors,[5] such a covenant was held not to be a release which would discharge a joint tortfeasor from liability (*Stewart* v. *Cox* (1961) 55 Cal.2d 857, 861 [13 Cal.Rptr. 521, 362 P.2d 345]; *Markwell* v. *Swift & Co.* (1954) 126 Cal.App.2d 245, 252 [272 P.2d 47], overruled in part by *Stewart, supra,* on other grounds). Nevertheless, where there was no joint tortfeasor to be affected, such a covenant has been given the effect of a release. (*Matthey* v. *Gally & David* (1854) 4 Cal. 62; *Sunset Scavenger Corp.* v. *Oddou* (1936) 11 Cal.App.2d 92, 96 [53 P.2d 188].) The reasoning behind the latter ruling is thus stated in 5A Corbin on Contracts, (1964 ed.) page 600, section 1251: "A contract by a creditor never to bring action against his debtor for the enforcement of the debt is legally operative as a discharge of the debtor's duty. . . . Such a contract as this is not in terms a release. Being in the form of a promise by the creditor, it might seem to be intended to create a duty in him, rather than to discharge an existing duty in another person. To refuse to give it effect as a discharge, however, would result in an unnecessary and highly undesirable circuity of action. If the creditor should sue the debtor for the enforcement of his original claim, the debtor could at once maintain a counteraction for damages for the breach of the creditor's promise never to sue. The damages to which the debtor would be entitled in this counter-action would include the amount of the creditor's recovery in his action against the debtor. In spite of its promissory form, *such a contract by the creditor clearly indicates an intention to discharge the obligor, in any case not involving a joint obligor* . . . In the case of joint obligors, the device of a contract not to sue was adopted in order to escape the technical rule, applicable to joint contracts, that the discharge of one joint obligor necessarily discharges all the others." (Italics added.) ■ And, as stated in *Sunset, supra,* 11 Cal.App.2d at page 96: "A covenant not to sue a sole tortfeasor is, to avoid circuity of action, considered in law a release and may be so pleaded in an action against such tort-feasor. But a covenant not to sue one of several tort-feasors cannot be so pleaded by the covenantee,

---

[5]Code of Civil Procedure section 875 et seq., which are inapplicable. We are not dealing with the problem of joint tortfeasors.

■

who must seek his remedy in an action for breach of the covenant." We think this reasoning also applies to a covenant not to execute.

It is true that a seemingly contrary rule is stated in *Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 662 [320 P.2d 140]: "The covenant not to execute is similar to the covenant not to sue. Whatever the legal effect of such covenants may be, and the law is not too clear on this subject, it can at least be said that such a covenant does not amount to a release or satisfaction of the debt. It does not extinguish the cause of action or the judgment." (And see: *Critz* v. *Farmers Ins. Group* (1964) 230 Cal. App.2d 788, 803 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142].) *Ivy* and *Critz*, however, both involved claims that insurance carriers, in bad faith, had permitted judgments in excess of policy limits to be entered against their insureds, who were found thus to have been exposed to damages even though a covenant not to execute had, in each case, been obtained, protecting them against execution. These cases establish that a covenant not to execute does not have a self-executing effect; *i.e.,* the judgment exists.

Where there is, as here, but a single judgment debtor, we see no reason why a covenant not to execute against him may not be given the effect of an outright release whenever a request to enter satisfaction of judgment is put in the form of a motion, pursuant to Code of Civil Procedure section 675. Were the contrary the rule, such a judgment might stand against the debtor indefinitely; we may have little doubt that its existence could impair his credit standing and deter others from entering business dealings with him. He should be entitled to a discharge from the judgment, under the circumstances here outlined.

In light of the foregoing it becomes unnecessary to consider respondent's contention that the agreement not to execute amounted to an accord and satisfaction, nor need we consider other arguments advanced by respondent.

The order is affirmed.

Files, P. J., and Jefferson, J., concurred.